W.W. (Doc) TAYLOR, et al.,
Appellants,

v.

TRANS–CONTINENTAL PROPERTIES,
LTD., et al., Appellees.

No. 12–84–0133–CV.

Court of Appeals of Texas,
Tyler.

April 14, 1987.

Rehearing Denied July 16, 1987.

William E. Palmer, Dorothy G. Palumbo, Dennis Schwartz, Wm. H. Kugle, Jr., John E. Collins, Dallas, for appellants.

Daniel F. Dean, Palestine, for appellees.

## OPINION ON RECORD

COLLEY, Justice.

On June 27, 1985, we delivered an unpublished opinion in this cause on the merits of an appeal brought by Southwest Mortgage Service Corporation and W.W. (Doc) Taylor, defendants/appellants (Taylor) from a judgment rendered in favor of Trans-Continental Properties, Ltd., Pine Hill Lake & Golf Course, Inc., Pine Hill Inn, Inc., and Pine Hill Lake and Golf Corporation, plaintiffs/appellees (Trans-Continental). We reversed the trial court's judgment and remanded the cause for a new trial. The Supreme Court, by per curiam opinion delivered on March 26, 1986,[1] granted Trans-Continental's application for writ of error, and reversed our judgment, but remanded the cause to us with instructions "to proceed according to [its] opinion." *Trans-Continental*, 717 S.W.2d at 891. In its opinion the Supreme Court stated, "Although properly raised by motion to dismiss the appeal and uphold the trial court's judgment, the court of appeals' opinion did not address whether the [initial] Rule 21c

motion [by Taylor] was timely." The motion referred to by the Supreme Court did, in fact, assert that the record had not been timely filed as to a modified judgment signed on February 23, 1984. It is true that we did not address that motion in our opinion, but the record clearly reveals that on June 28, 1984, we overruled that presubmission motion by which Trans-Continental had urged this court to "enter an order affirming the judgment of the trial court." However, our action in overruling the motion prior to submission of the case on the merits constituted an interlocutory order. *Smith v. Free*, 130 Tex. 23, 107 S.W.2d 588, 589–590 (1937). In such circumstances, the ruling on the motion must be either assigned as error by cross-point in the appellate brief or incorporated in a motion for rehearing filed in the court of appeals; otherwise the error, if any, is waived. *Smith v. Free*, 107 S.W.2d at 590; *see also Keck v. Roberson*, 133 Tex. 466, 130 S.W.2d 287 (1939). Trans-Continental did not bring a cross-point in its brief contending that we erred in overruling the presubmission motion filed by it, nor did it raise the issue in its motion for rehearing filed in this court on July 9, 1985. Trans-Continental's motion for rehearing simply alleged that this court had no jurisdiction to hear the cause on the merits. Its argument was that the record was not filed within one hundred days of the February 3, 1984, judgment and, therefore, we were without the jurisdiction to extend the time for filing the record because Taylor *failed to establish the requisite good cause*. Trans-Continental argued that we abused our discretion in extending the time for the filing of the record, because the delay was brought on by Taylor's own negligence. At no time did Trans-Continental expressly assert 'in this Court that the initial 21c motion for extension of time to file the record herein was untimely as it related to the February 23, 1984, modified judgment, nor is such contention raised inferentially by other lan-

---

1. *Trans-Continental Properties, Ltd., et al. v. W.W. (Doc) Taylor, et al.,* 717 S.W.2d 890 (Tex. 1986).

guage found in its motion for rehearing in this court. Trans-Continental by its fourth point in its application for writ of error, however, *complained for the first time* in this case's appellate history, that if the time for filing the record under former Rule 386 [2] began to run from the date of the February 23, 1984, modified judgment, "since Respondent filed no motion for new trial," respecting the February 23, 1984, judgment, that Taylor's initial 21c motion to extend the time for filing the record "should have been submitted on or before May 8, 1984." [3] The law question raised by that point was never presented to this court other than by the presubmission motion. Hence under *Smith v. Free* and *Keck v. Roberson*, the action of this court overruling the presubmission motion to affirm the lower court's judgment remained interlocutory and unappealed, and should not have been considered by the Supreme Court. Rules 458(b), 469. [4] Nonetheless, we both recognize and respect the Supreme Court's prerogative to determine its own jurisdiction in the matter. Therefore, in obedience to its direction, we issued the appropriate notice under former Rule 387(b). [5] Both parties promptly responded. Briefs were submitted, and the cause on remand was set for submission [6] with oral argument. In accordance with our request, the parties addressed two questions: first, does this court have authority to pass on the timeliness of the filing of Taylor's initial Rule 21c motion to extend the time for filing the record on appeal, and second, was the motion filed timely?

Taylor argues that we are not foreclosed from now addressing the second question posed above and calls to our attention the fact that there was a pleading filed in this case by Taylor on March 6, 1984, which was the equivalent of a motion for new trial. [7] Thus, Taylor contends that the initial 21c motion was timely filed on the eleventh day following the entry of the February 23, 1984, judgment. On the other hand, Trans-Continental claims that our decisional action on remand in this cause is limited to an affirmance of the trial court's judgment, or dismissal of Taylor's appeal.

The parties have furnished us with a copy of the withdrawn per curiam opinion by the Supreme Court in this cause issued on November 20, 1985. That opinion closed with the following language:

> Although properly raised by motion to dismiss the appeal and uphold the trial court's judgment, the court of appeals did not address whether the Rule 21c motion was timely. Because the opinion of the court of appeals conflicts with Tex.R.Civ.P. 21c, 329b(h) and 386, we reverse the judgment of the court of appeals *and dismiss the appeal.*

(Emphasis ours.) The per curiam opinion of the Supreme Court of March 26, 1986, 717 S.W.2d at 891, in part states:

> Thus, the court of appeals had no authority to consider the late transcript and statement of facts not permitted under Rule 21c, *B.D. Click,* [*v. Safari Drilling Corp.*], 638 S.W.2d at 862, but could only dismiss the appeal or affirm the trial court's judgment. Tex.R.Civ.P. 386. Tex.R.Civ.P. 387(b) provides that before dismissing an appeal, the court of appeals may give notice to the parties and *ask them to submit reasons why the appeal should not be dismissed.*

---

2. Tex.R.Civ.P. now Tex.R.App.P. 54(a).

3. The initial 21c motion was filed by Taylor on June 13, 1984.

4. Former rules of Texas Rules of Civil Procedure, now Tex.R.App.P. 100(d), 131(e). *See Albright v. City of Houston,* 677 S.W.2d 487 (Tex. 1984); *Smith v. Baldwin,* 611 S.W.2d 611, 618 (Tex.1980).

5. Now Tex.R.App.P. 60(a)(2). All reference to rules hereafter made are to the Texas Rules of Civil Procedure as they existed before April 1, 1984.

6. Oral argument was heard on February 11, 1987.

7. The pleading was entitled "Demand for Removal" and was filed in the trial court on March 6, 1984. That pleading is attached hereto as Appendix A.

Although properly raised by motion to dismiss the appeal and uphold the trial court's judgment, the court of appeals' opinion did not address whether the Rule 21c motion was timely. Because the opinion of the court of appeals conflicts with Tex.R.Civ.P. 21c, 329b(h) and 386, we reverse the judgment of the court of appeals *and remand to that court to proceed according to this opinion.*

(Emphasis ours.) If we accept Trans-Continental's view of the "instruction" on remand, we would be required to read the Supreme Court's mandate thus: *we reverse the judgment of the court of appeals and remand the cause to that court to affirm the trial court's judgment or dismiss the appeal as it chooses pursuant to Rule 387(b).*[8] Such a construction of the Supreme Court's opinion renders its remand to this court senseless. We do not believe the Supreme Court intended that we elicit responses from the parties under Rule 387(b), if in fact we are only authorized as a matter of form[9] to dismiss the appeal or affirm the judgment. Rather, we are persuaded that the Supreme Court authorized this court to do something that it had not done on original submission, that is, to pass on the timeliness of Taylor's initial 21c motion; and in so doing to apply Rules 21c, 386, and 329b(h) as they have been construed by the Supreme Court in this cause. Certainly the Supreme Court may properly do just that under Rule 483. *See Hotel Dieu Hospital v. Huerta,* 639 S.W.2d 462 (Tex.1982).

Therefore, we address the question whether Taylor's initial 21c motion was timely. We conclude that it was. The record reveals that on March 6, 1984, Taylor filed in the trial court a pleading designated "Demand for Removal" (see Appendix "A"). Admittedly, the pleading bears a

bizarre caption or label, but it does call to the trial court's attention that the contractual instrument upon which Trans-Continental's cause of action was predicated provided for arbitration in the following language: "Any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled at the option of either party, by arbitration ... and judgment upon the award may be entered in any Court having jurisdiction thereof." The pleading alleged that the February 23, 1984, judgment in the cause was not yet final, and concludes with a prayer for relief as follows, to wit:

WHEREFORE, defendants make demand upon this Honorable Court for removal of same, instanter, to the American Arbitration Association in Dallas, Texas, for cost and attorney's fees, and *for all other relief proper in the premises.* (Emphasis ours.)

The pleading does not expressly request the trial court to set aside the February 23rd judgment or grant a new trial, but by the clear and necessary implication of the language employed in this pleading, the trial court is requested to do so. A motion for new trial, like any other pleading, is judged not by its form but by its substance. *Stevens v. Douglass,* 501 S.W.2d 383, 385 (Tex.Civ.App.—Texarkana 1973), *rev'd on other grounds,* 505 S.W.2d 532 (Tex.1974); *Mercer v. Band,* 454 S.W.2d 833, 835 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); *Worth Steel Corporation v. Gartman,* 361 S.W.2d 426, 429 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.); *Chekanski v. Texas N.O.R.R. Co.,* 306 S.W.2d 935, 937 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). Furthermore, even if the grounds asserted by a pleading (construed as a motion for new trial) are meritless, the pleading nevertheless is ef-

**8.** Now Tex.R.App.P. 60(a)(2) as pertinent here reads:

If it appears to the appellate court that an appeal ... is subject to dismissal ... for failure to comply with any requirements of these rules ... the court may, on its own motion, give notice to all parties that the case will be dismissed unless the appellant or any party

desiring to continue the appeal ... files with the court within ten days a response *showing grounds for continuing the appeal....* (Emphasis added.)

**9.** A distinction without a difference.

fective to extend the time for accomplishing appellate steps required by the rules, e.g., filing a cost bond where necessary, or filing the record on appeal. *Neely v. Tarrant County*, 132 Tex. 357, 124 S.W.2d 101, 103–104 (1939). We conclude that the "Demand for Removal" filed by Taylor on March 6, 1984, constituted in substance a motion for new trial. Therefore, Taylor was required to file his initial Rule 21c motion on or before June 17, 1984. Taylor filed such motion timely on June 13, 1984. Trans-Continental's contention that the motion was not timely filed is overruled, and its motion under 387(b) to affirm the trial court's judgment is therefore denied. We now address the merits of Taylor's appeal.

Plaintiffs/appellees, Trans-Continental Properties, Ltd., Pine Hill Lake & Golf Course, Inc., Pine Hill Inn, Inc., and Pine Hill Lake and Golf Corporation (Trans-Continental), recovered judgment in a bench trial against Taylor, jointly and severally, for actual and exemplary damages and attorney's fees in a suit for fraud and breach of a written contract. In addition, the judgment cancelled a deed of trust held by Taylor against certain lands owned by Trans-Continental. We reverse and remand the cause.

The record reflects that Trans-Continental was in the business of developing certain real properties owned by it, and known as Pine Hill Lake Resort. Trans-Continental built several ten-unit condominiums on a part of the property and sold "time share" rights to its clients for fifty weeks each year. Trans-Continental also marketed and sold lots in the resort to the public. Because of a "cash flow" problem, Trans-Continental sought and entered into a written agreement with Taylor on March 17, 1983. Under the terms of the contract, Taylor agreed to purchase, when presented to it by Trans-Continental, notes and other obligations given by purchasers of condominium units on a time share basis and lots from Trans-Continental for a twelve-month period in a total amount "not to exceed" $3,000,000. Taylor's obligation to purchase such notes and time share contracts was subject to certain conditions precedent. Paragraph 9 of the contract reads:

> 9. To guarantee your performance under this commitment and to assure SMSC that all taxes, insurance and maintenance costs are timely paid you will grant unto SMSC a deed of trust on the subject property and execute a collateral note in the amount of Three Million Dollars ($3,000,000.00).

In compliance with such provision of the contract, Trans-Continental executed and delivered a $3,000,000 note payable to Taylor and a deed of trust covering Trans-Continental's properties. The deed of trust recites that it is given for the purpose of insuring Trans-Continental's performance of the contract (commitment) "and to further insure the endorsement of all notes sold by Grantors [Trans-Continental] to Beneficiary [Taylor]." Trans-Continental pleaded the contract and alleged that it "[had] performed all necessary acts upon [its] part as required under the terms of the commitment" and that Taylor had breached the contract by refusing to purchase notes in the following amounts on the following dates, to-wit:

June 14, 1983—notes in the amount of $50,000;

June 21, 1983—notes in the amount of $63,000; and

June 28, 1983—notes in the amount of $49,600.

Trans-Continental also alleges that Taylor was guilty of fraud in the inducement of the contract, i.e., that Taylor represented to Trans-Continental that they "would commit for a period of one (1) year a total sum of $3,000,000.00 for the purchase of time-share unit contracts and lot sale mortgages." That such representation was false, was known by Taylor to be false at the time it was made, and was made with intent that Trans-Continental should act on it, and that Trans-Continental relied on same to its damage. The trial court at Taylor's request, made and filed findings of fact and conclusions of law. Among these findings are:

(3) Defendants did refuse to purchase commercial paper from Plaintiffs on June 14, 1983, June 21, 1983 and June 28, 1983;

(4) When the $3,000,000 note and Deed of Trust were signed by Plaintiffs and given to Defendant Southwest Mortgage Service Corporation, no monies were received by Plaintiffs.

(5) Defendants made material, deceptive, false and malicious misrepresentations to Plaintiffs.

(6) Plaintiffs acted in reliance upon the representations made by Defendants and suffered injuries thereby.

(7) The representations made by Defendants to Plaintiffs were done with the intent that Plaintiffs would act upon such representations.

(8) Plaintiffs were damaged by Defendants in the amount of $367,000.00 plus punitive damage in the amount of $200,000.00.

. . . .

(10) The $3,000,000 note and Deed of Trust signed by Plaintiffs and delivered to Defendant Southwest Mortgage Service Corporation were without consideration, and have no underlying debt.

Based on these findings, the trial court concluded that Taylor breached the contract, that such breach was accompanied by fraud; that the $3,000,000 note and deed of trust securing the payment of same are null and void, and constitute a cloud on Trans-Continental's title to the subject property and were given without consideration, for all of which the trial court found that Trans-Continental should recover the damages and attorney's fees set forth in the judgment.

A brief discussion of the posture of the case at the time it came to trial is appropriate.

The case first came to trial before the court on January 12, 1984. At that trial, neither Taylor nor its counsel was present. After hearing the evidence, the trial court signed a judgment on January 19, 1984, awarding Trans-Continental actual damages in the amount of $1,794,644.71, punitive damages in the sum of $200,000, and attorney's fees in the amount of $176,000. Taylor filed a motion for new trial which was heard on January 26, 1984, by the trial court who took the matter under advisement until January 31, 1984. The trial judge required the parties to appear at 9:00 a.m. on January 31, 1984, advising them that if he granted the motion for new trial, he would expect the parties to be ready to proceed to trial on January 31, 1984. Taylor and Trans-Continental agreed to be ready for trial. On January 31, 1984, Taylor filed a pleading denominated a counterclaim against Trans-Continental seeking to recover damages against Trans-Continental in the amount of $175,000 and attorney's fees for breach of contract. Trans-Continental filed an objection to the counterclaim alleging that it was filed within seven days of the day of trial and operated as a surprise to Trans-Continental. After arguments before the court by the attorneys in the case respecting Taylor's counterclaim, the trial judge disallowed the filing of such pleading. The record shows that counsel for Trans-Continental was delivered a copy of the counterclaim either on January 26 or January 27, 1984. The gist of Taylor's allegation in its counterclaim was that plaintiff had refused to repurchase certain notes purchased by Taylor from Trans-Continental which were in default and which under the contract were required to be repurchased by Trans-Continental. The counterclaim also alleged a defensive matter, i.e., that Trans-Continental had failed to comply with some of the conditions precedent set forth in the contract.

The second trial of the case was commenced on January 31, 1984. The trial judge orally declared he was granting the motion for new trial to Taylor, but did not sign an order granting the new trial until February 1, 1984, the second day of the second trial.

■ Taylor urges eleven points of error. In its first point, Taylor contends that the trial court abused its discretion in denying

leave to file the amended answer and counterclaim on January 31, 1984. We agree. It is clear from the record that Taylor was constrained by the trial judge to go to trial within five days from the date the motion for new trial was heard on January 26, 1984.[10] The filing of amended pleadings within seven days of trial is governed by Rule 63. Such rule provides that leave shall be granted to file the same unless there is a showing that the amendment will operate as a surprise to the opposite party. The record demonstrates that a copy of the proposed pleading was delivered to counsel for Trans-Continental on Thursday, January 26, or on Friday, January 27, 1983, and that counsel for Trans-Continental was informed that Taylor was going to submit the amended pleadings alleging that Trans-Continental had not complied with various conditions precedent as set forth in the contract. In addition, the counterclaim alleged that Trans-Continental failed to repurchase certain notes alleged to be in default by Taylor as required by the provisions of the contract. In view of the coercion exerted on Taylor to announce ready for trial on January 31, 1984, in order to obtain a favorable ruling on its motion for new trial, we conclude that the trial court abused its discretion in refusing to permit the amended pleadings to be filed, and postponing the trial, if requested, in order that Trans-Continental could prepare to meet the evidence that would be introduced under the counterclaim. Further, we note that Trans-Continental alleged that they had complied with each of the conditions precedent, and it is difficult to perceive why Trans-Continental was not ready to prove it had complied with such conditions precedent.[11] Point one is sustained.

■ Taylor contends under point six that the evidence is legally and factually insufficient to support the trial court's finding that the deed of trust was not supported by consideration. We sustain the point. The record shows conclusively that the deed of trust and the accompanying note were given to secure the performance by Trans-Continental of the obligations under the contract. Such is adequate consideration to support the same as a matter of law. *Williams v. Silliman*, 74 Tex. 626, 12 S.W. 534 (1889); *Harris v. N. Parker & Son*, 23 S.W.2d 745, 746 (Tex.Civ.App.—Texarkana 1930, no writ).

Taylor under its 7th point of error contends that the evidence is legally and factually insufficient to support the trial court's finding of actual damages in the amount of $367,000. Under this record, the court's award of such damages must necessarily rest upon the refusal of Taylor to purchase certain notes delivered to it by Trans-Continental on June 14, 21st and 28th, 1983, in the aggregate amount of $162,600. Assuming, without deciding, that Taylor's refusal to purchase such notes constituted a partial breach of its contract with Trans-Continental, the questions before us are whether the evidence shows that Trans-Continental sustained lost profits in the amount of $367,000 as the natural and probable consequences of Taylor's breach of the contract, *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938), and whether the amount of the lost profits was established by competent evidence with reasonable certainty. It

10. "The Court having heard the evidence in this motion for new trial is going to take the motion under advisement and I'm going to set it—set it for ruling—to rule on it on January the 31st at nine a.m. in this courtroom at which time the Court will also determine if the Movant can announce ready for trial on January the 31st, 1983 at nine a.m. Movant, as well as Plaintiffs in this case—what I'm saying, gentlemen, is I would expect you, if you anticipate a favorable ruling on your motion for new trial, for all parties to announce ready." (Remarks made by trial court on January 26, 1984).

"Mr. Headlee, can you represent to me that without reservation you are ready to go forward in the trial of this case.... Mr. Headlee, that you are without reservation ready to proceed to trial in the matter, I am disposed to grant the motion for new trial." (Remarks of the trial judge on January 31, 1984).

11. On the trial, Miller M. Dial, President of Trans-Continental, admitted that Trans-Continental in fact had *not* complied with at least two conditions precedent found in the contract.

must be kept in mind that the contract in no way prevented Trans-Continental from selling lots or time share contracts in condominium units for whatever prices, and upon whatever terms it chose. Simply stated, Taylor's obligation to Trans-Continental under the contract was to purchase, if requested to do so, notes belonging to Trans-Continental up to a total of $3,000,000 for lot sales and time share contracts within the twelve-month period beginning March 17, 1983. Taylor had no control over the prices fixed by Trans-Continental in such sales or the number of sales made by Trans-Continental, and he could not require Trans-Continental to present notes to him for purchase. There is no evidence in the record demonstrating what the net profits of Trans-Continental would have been had Taylor purchased the notes tendered in June 1983 in the aggregate amount of $159,000.[12] Stated another way, there is no evidence to establish that the failure of Taylor to purchase the June notes caused any loss of net profits to Trans-Continental. Trans-Continental failed to prove by competent evidence any facts even tending to show that Taylor's failure to purchase such notes adversely affected their subsequent overall sales operation. In fact, the record shows that the sales staff of Trans-Continental was increased from two in April 1983 to six in May 1983, twelve in June 1983, and fourteen in July 1983. It is true the testimony shows that in August 1983 the sales staff was cut back to six *because of a decrease in the number of prospective purchasers visiting the premises.* The record shows that Trans-Continental then further reduced its sales staff to three in September, October and November 1983. However, the above evidence demonstrates that following Taylor's refusal to purchase the notes in June 1983, Trans-Continental was able to increase its sales staff to fourteen in July and maintained six persons on its sales staff in August 1983. The record further shows that Trans-Continental was in debt for purchase of its properties in the sum of approximately one and one-half million dollars and had been having "cash flow" problems before March 1983 and was delinquent in payment of accounts owed by it in the sum of $230,000 prior to June 1983. An accountant, John Thomas, who testified for Trans-Continental stated that the corporation as of March 1983 had lost some $60,000 through that date in its business operations. Further, the evidence shows that Trans-Continental, beginning in October 1983, was able to sell some of its notes and contracts to another investor. In *Southwest Battery Corporation v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, the Supreme Court approved "certain rules applicable to an action for damages for loss of profits," as set forth in the following quotation from Corpus Juris § 112–f, p. 785, to wit:

> The generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequences of the act or omission complained of, and their amount is shown with sufficient certainty, there may be a recovery therefor; but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated. So evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness.

The Supreme Court went on to state that the rule of decision in Texas is fairly well summarized by the language of 13 Tex.Jur. § 144, p. 215, that is to say:

> In order that a recovery may be had on account of loss of profits, the amount of the loss must be shown by competent evidence with reasonable certainty. Where the business is shown to have been already established and *making a*

12. The total due on the notes as shown by the evidence.

*profit* at the time when the contract was breached ... such *pre-existing profit,* together with other facts and circumstances, may indicate with reasonable certainty *the amount of profits lost.* It is permissible to show the amount of business done by the plaintiff in a corresponding period of time not too remote, and the business during the time for which recovery is sought. Furthermore, in calculating the plaintiff's loss, it is proper to consider the normal increase in business which might have been expected in the light of past development and existing conditions.

115 S.W.2d at 1098–99 (emphasis ours).

■ Trans-Continental's operations had not shown a profit at the time of Taylor's breach in June 1983. Its business ventures, that is the development of "time share condominiums and sales of lots in its resort area," was a highly speculative business, dependent on a fluctuating real estate market. Not only was Trans-Continental heavily in debt, but it was in actual default to some of its creditors. The evidence adduced by it wholly failed to provide a basis for any reasonably certain estimation of lost profits resulting from Taylor's alleged breach of contract. *Atomic Fuel Extraction Corporation v. Slick's Estate,* 386 S.W.2d 180, 189 (Tex.Civ.App.—San Antonio 1964), *writ ref'd n.r.e.,* 403 S.W.2d 784 (Tex.1965).

Therefore, after a careful review of the record, viewing the evidence in the light most favorable to the trial court's findings of actual damages, resulting from the refusal of Taylor to purchase the June 1983 contracts of Trans-Continental, that is, considering only the evidence and inferences tending to support the finding and disregarding all contrary evidence and inferences, we conclude that there is no evidence to support the damages (lost profits) found by the trial court. Additionally, after studying and weighing all the evidence, most of which has been fully discussed,[13]

relating to damages allegedly suffered by Trans-Continental, we find the evidence is factually insufficient to support the trial court's finding of actual damages, and that the finding of damages (lost profits) is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Point seven is sustained.

Our decisions on points one, six and seven are dispositive of the appeal, and we decline to address Taylor's remaining points of error.

Ordinarily, when a "no evidence" point is sustained against a plaintiff, an appellate court should reverse and render judgment that the plaintiff take nothing; however, when it is apparent that the evidence was not fully developed at trial, justice requires a remand rather than a rendition.[14] In our opinion, justice requires a remand in this cause. The judgment is therefore reversed, and the case remanded for a new trial.

APPENDIX A

TRANS–CONTINENTAL PROPERTIES, LTD., PINE HILL LAKE & GOLF CLUB, INC., PINE HILL INN, INC., AND PINE HILL LAKE AND GOLF CORPORATION, PLAINTIFFS,

VS.

W.W. TAYLOR AND SOUTHWEST MORTGAGE SERVICE CORPORATION, DEFENDANTS

IN THE 87TH JUDICIAL DISTRICT COURT OF ANDERSON COUNTY, TEXAS
DEMAND FOR REMOVAL

Come now the defendants in the above-entitled cause of action and hereby make demand upon this Honorable Court for removal of same, instanter, to the American Arbitration Association, in Dallas, Texas, for the following reasons:

---

13. In accordance with the teachings of *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

14. *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699, 704 (1951).

**882**

(1) That plaintiffs and defendants entered into a commitment agreement on or about March 17, 1983 (attached as Exhibit A to plaintiff's original petition).

(2) Pursuant to said agreement, Paragraph 12B. (Exhibit A–4) reads as follows:

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled at the option of either party, by arbitration in accordance with the Rules of the American Arbitration Association in Dallas, Texas, and judgment upon the award may be entered in any Court having jurisdiction thereof.

(3) That this matter is still pending and that judgment herein is not final, in that the Court's Corrected and Reformed Judgment was signed by the Court on February 23, 1984, and final judgment does not go into effect thereon until March 23, 1984.

WHEREFORE, defendants make demand upon this Honorable Court for removal of same, instanter, to the American Arbitration Association in Dallas, Texas, for costs and attorney fees, and for all other relief proper in the premises.

Respectfully submitted,

/s/William P. Headlee
William P. Headlee
Atty. for Defendants
Southwest Mortgage Service Corporation
3905 Turtle Creek Blvd.
Dallas, Texas 75219
(214) 522–7060
TX. Lic. # 09325100

FILED: MARCH 6, 1984