**Louis COUDER et al., Petitioners,**

**v.**

**Modesto GOMEZ et al., Respondents.**

No. A–9934.

Supreme Court of Texas.

April 15, 1964.

Edwards, Belk, Hunter & Kerr, El Paso, for petitioners.

Scott, Hulse, Marshall & Feuille, Taylor Nichols, with above firm, Holvey Williams, El Paso, for respondents.

CULVER, Justice.

This suit was filed by Louis Couder, Esperanza Rueda, and her husband, Gilberto Rueda, against Modesto A. Gomez, Albert B. Eger and Yolanda Pedregon, joined by her husband, Roberto Pedregon, seeking to recover their respective interest in the assets of a business that was known as Golf Wholesale Company. The trial court gave an instructed verdict and rendered judgment in favor of the defendants that Couder and the Ruedas take nothing. The Court of Civil Appeals in affirming this judgment [1] considered that the suit was brought solely for conversion of plaintiffs' property and that plaintiffs had failed to discharge the burden of proving all of the elements of conversion.

The plaintiffs did allege in their petition that the defendants conspired with

1. 373 S.W.2d 345.

each other to defraud the plaintiffs by taking over and appropriating to themselves all the assets of the Company. However, in construing the allegations most favorably to the plaintiffs, in our opinion they did plead a suit for an accounting. Staats v. Miller, 150 Tex. 581 (1951), 243 S.W.2d 686.

Originally Couder, Felix De Hoyos and Modesto Gomez were partners in the operation of this concern. The latter two invested a substantial amount of money. Couder made no cash investment but drew a salary as one of the managing partners and was credited with one-third of the profits, none of which he ever withdrew. De Hoyos was also a managing partner and was paid a salary. Later there was a plan to incorporate which was never completed, and several other people paid substantial sums of money into the Company, whether by way of investments or loans is not clear. Couder contends that these people, including Mr. and Mrs. Rueda, own a percentage of the Company proportionate to the money paid in, though it was never incorporated. There is no written evidence on this point. Couder maintains that his share amounts to 8.8% as a result of his share of the profits which remained on hand with the Company.

In 1959 Couder became totally disabled as a result of an automobile collision and two days thereafter the other managing partner, De Hoyos, committed suicide. It was then agreed by all the parties at interest that Gomez should take over the assets of the Company, liquidate the same and distribute the proceeds among those entitled to share.

Gomez accepted this appointment and proceeded to dispose of the assets and liquidate the business. At about the same time he was also appointed and qualified as the temporary administrator of the estate of Felix De Hoyos. Gomez apparently considered that De Hoyos and Couder as partners owned the business subject to claims and debts. He showed on the Golf balance sheet as of December 31, 1959, that the

equity of De Hoyos in the business amounted to approximately $16,000.00 and that of Couder amounted to approximately $2500.00. The balance sheet of September 30, 1960, showed the De Hoyos equity as approximately $23,000.00 and that losses incurred by Gomez in the liquidation of the business had wiped out Couder's equity. Apparently the increase in the De Hoyos equity comes about by the transfer of the Gomez equity to De Hoyos. Therefore Gomez treated the assets and liabilities of the Golf Company as being a part of the De Hoyos estate and so tabulated them in his official reports. On the 21st of September, 1960, in the inventory and appraisement showing the condition of the estate of Felix De Hoyos as of July 3, 1959, the date when Gomez qualified as administrator, he showed the equity of Felix De Hoyos to be $28,536.00 and that of Louis Couder $5,099.22. In his report covering the period from July 3, 1959, through September 30, 1960, Gomez reports a net loss of $11,125.00. He then proceeded to charge half of this loss against Felix De Hoyos and half against Louis Couder which resulted in reducing the equity of De Hoyos to about $23,000.00 and reducing the equity of Louis Couder to a minus $463.00.

█ Couder contends that the claimed operating loss of $11,125.00 was erroneous in several respects. For instance, he says that the item of $1500.00 shown as legal expense was expended solely in the handling of the probate proceedings of the De Hoyos estate and should not be charged against the business of Golf Wholesale Company. He also contends that the losses should have been prorated between him and the De Hoyos estate on the basis of their respective interests rather than charged one-half to each. We agree with this contention. So long as the business was a going concern and operated by Couder and De Hoyos the agreement to share equally the profits would imply that they would likewise be charged equally with the losses. However, when the affairs and the management of the business were turned over to Gomez as trustee

the interest of the parties became fixed and the losses incurred by the trustee in liquidation should be prorated according to the interest each partner owned at the time the trustee took charge.

Gomez filed a general denial and additional pleadings that Mr. and Mrs. Rueda bought from him as trustee of the Golf Company merchandise in the sum of $2,-000.00 for which they agreed to pay at the end of the current month, but that they have refused to pay any part of the same and Gomez has sued them in the District Court of El Paso County where the suit is now pending. The Ruedas admit the purchase and say it should be allowed as an offset to their claim. Other than the general denial the only defense alleged to Couder's claim is that he and his attorney had actual knowledge of the proceedings in the probate court in connection with the De Hoyos estate, and the property disbursed without any complaint and are now estopped and barred from asserting any claim against the defendants. Of course this at most would raise only a question of fact.

■ We are of the opinion that Couder was entitled to recover his percentage of the assets of the Company, whatever they may have been, after the losses and debts were satisfied. From the testimony and the exhibits the amount of money and the value of the merchandise that was turned over to the estate of De Hoyos are not shown nor can we tell what disposition was made, if any, of the claims of the investors or lenders among whom were the Ruedas. In the confused state of the record the take-nothing judgment rendered against the Ruedas and Couder should be reversed and remanded.

There is no proof that the trustee, Gomez, converted any of the property belonging to the plaintiffs to his own use and benefit or that he acted fraudulently. Nor is there any evidence of any conspiracy between these defendants to defraud or mislead the plaintiffs.

The defendant, Eger, was employed both by Golf Wholesale Company and by Gomez after his appointment as trustee to keep the books and accounts and there is no proof of conspiracy or fraud on his part.

Mrs. Pedregon is the daughter of Mrs. De Hoyos. There is no proof as to what property was turned over by the administrator to her or the value of the same. Whatever property she did receive was delivered to her by the temporary administrator under the approval and order of the probate court. Certainly Mrs. Pedregon occupied no fiduciary relationship to Couder and there is no evidence in the record that would support any judgment against her or her husband.

Accordingly, the judgments of the courts below are affirmed in so far as the take-nothing judgments in favor of Eger and Pedregon are concerned and otherwise they are reversed and the cause remanded to the trial court.