**BRAZOSPORT BANK OF TEXAS, Appellant,**

v.

**OAK PARK TOWNHOUSES, General Partnership, and Clark E. Flournoy, Appellees.**

**No. C14–90–00267–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 8, 1994.

Rehearing Overruled Oct. 15, 1994.

Hayden Burns, James O'Donnell, Houston, for appellant.

Gary L. McConnell, Angleton, for appellees.

Before ROBERTSON, DRAUGHN and JUNELL,* JJ.

## OPINION ON REMAND

DRAUGHN, Justice.

Brazosport Bank of Texas appeals an adverse judgment in its suit against Oak Park Townhouses, Flournoy, and others, not parties to this appeal, to collect monies owed pursuant to a promissory note executed by Oak Park and guaranteed by Flournoy. Brazosport raises eight points of error. We affirm in part, reverse and render in part, and reverse and remand in part.

The following is a brief summary of the facts leading to Brazosport's filing of suit against appellees. Brazosport committed to loan Oak Park the principal amount of $690,000.00 at an interest rate of ten percent (10%) per annum. One of the terms was that Oak Park was to agree to pay Brazosport a "non-refundable commitment fee equal to $35,000.00 as consideration for the issuance of this commitment for Lender holding funds available to Borrower until such funds are needed to be drawn against." This paragraph further stated that this fee was "in addition to the interest payable by Borrower...." Jim Truck, the current President of Brazosport Bank, testified that this commitment fee was part of the "interest rate scenario for this loan." However, Truck later

---

* JUNELL, J., who was a member of the panel on original submission of this case, retired December 31, 1992.

admitted that this fee was a fee charged for making the loan.

Under the terms of this loan, Brazosport had the option, at any time after the second annual anniversary, upon sixty days notice, to declare the note immediately due and payable. Brazosport declared the note due on March 15, 1985. Brazosport renewed the loan at 12% interest with a 2% fee, or a fee of $13,641.44, of which Brazosport collected only $13,400.00. Oak Park defaulted on this loan and Brazosport accelerated the note and demanded the full amount. Upon appellees' default, Brazosport Bank filed suit to collect the amount due. Appellees filed an answer and counterclaim against Brazosport alleging the bank charged and collected unlawful loan fees, breached the duty of good faith, breached its fiduciary duty, and committed fraud, usury, breach of contract, negligence, negligent infliction of emotional distress, and violations of the DTPA.

At the beginning of trial, appellees stipulated that Brazosport was entitled to recover on the note subject to appellees' counterclaims and affirmative defenses and, thus, appellees were allowed to open and close by the trial court. The jury found in favor of appellees on grounds including unlawful loan fees, mutual mistake, economic duress, breach of contract, and breach of fiduciary duty. In its judgment, the trial court awarded damages to appellees based specifically on the claims of usury and breach of fiduciary duty. Therefore, the trial court denied Brazosport recovery on the note. Although the judgment did not discuss the other jury findings of liability, the judgment did state that it incorporated the verdict "for all purposes by reference."

Appellant raised eight points of error challenging the trial court's construction of TEX. REV.CIV.STAT.ANN. art. 342–508, the jury findings of breach of fiduciary duty, the trial court's actions during jury deliberations, and the award of attorney's fees to Flournoy. Points of error one through six concerned complaints about the findings of usury and breach of fiduciary duty. Brazosport did not challenge on appeal the other grounds reflected in the verdict for denying its recovery on the note. In our original opinion, we reversed the trial court's judgment against Brazosport based on usury and breach of fiduciary duty and allowed Brazosport to recover on the note. On motion for rehearing, appellees argued that, despite our ruling on usury and breach of fiduciary duty, we should render judgment for appellees on other grounds reflected in the verdict. We overruled appellees' motion for rehearing.

The supreme court granted appellees' application for writ of error and held that we had erred in not considering appellees' other grounds for denying recovery. *Oak Park Townhouses v. Brazosport Bank of Texas*, 851 S.W.2d 189, 190–91 (Tex.1993). Pursuant to the supreme court's mandate, we must address these alternative grounds. We turn first, however, to the grounds challenged on appeal.

## I. USURY

In point of error one, appellant claims the trial court erred in overruling Brazosport's motion for judgment on the verdict relating to Oak Park's usury claim. In point of error two, appellant contends the trial court erred in overruling Brazosport's motions for directed verdict and motion for judgment n.o.v. on Oak Park's usury claim because there was no evidence that the loan fees were not authorized by law and because Brazosport established as a matter of law that the loan fees were authorized. In its third point of error, appellant claims the trial court erred in entering judgment for Oak Park on its usury claim because art. 342–508 does not preclude Brazosport from charging interest. We address these points together.

Question 5 inquired whether the $35,000.00 fee charged by Brazosport Bank was for "(1) the making of the loan; or (2) for services rendered in connection with the making of the loan; or (3) for the purpose of committing BRAZOSPORT BANK OF TEXAS to make the loan at some future date." The jury found that the $35,000.00 fee was a fee for making the loan. Similarly, jury question 6 asked whether the $13,400.00 fee was a charge for "(1) the renewal of the loan to OAK PARK; or (2) for services rendered in connection with the making of the loan; or (3) for the purpose of committing BRAZOS-

PORT BANK OF TEXAS to make the loan at some future date." The jury found the $13,400.00 fee was a fee for the renewal of the loan.

Based on these jury answers, the trial court made the following findings in its final judgment: (1) that the two fees violated TEX. REV.CIV.STAT.ANN. art. 342–508; (2) that Brazosport had collected interest in the amount of $175,146.29; and (3) that the collection of such interest in addition to a loan fee constitutes the collection of interest in excess of that allowed by law since art. 342–508 expressly provides that when a loan fee is charged it shall be in lieu of all interest, and as a result, the statutory penalties for usury are applicable. Based on these findings, the trial court awarded Oak Park three times the interest collected by Brazosport as a penalty for usury and declared a forfeiture of any and all unpaid principal and interest sought by Brazosport.

■■■ Appellant argues that the only findings that would have supported the judgment would have been findings that the two fees were for services rendered in connection with the making of the loan. We agree. At the time of the loan transactions in question art. 342–508 provided:

No bank shall charge or collect any loan fee or any other charge, by whatever name called, for the granting of a loan unless authorized by law. Provided, however, a bank may require an applicant for a loan or discount to pay the cost of any abstract, attorney's opinion or title insurance policy, or other form of insurance, and filing or recording fees or appraisal fee. Expenses necessary or proper for the protection of the lender, and actually incurred in connection with the making of the loan may be charged. *In all loan transactions in which the amount loaned is $100.00 or more and the loan period is one month or more, a bank may charge any borrower the reasonable value of services rendered in connection with the making of any loan,* including the drawing of notes, the taking of acknowledgements and affidavits, the preparation of financial statements, and the investigation or analysis of the financial responsibility of the borrower or any endorser, surety or co-signer *in an amount agreed upon, but not to exceed $15.00 for each loan transaction, which shall be in lieu of all interest and other charges which could otherwise be collected in connection with the loan.*

Act of June 10, 1977, 65th Leg., R.S., ch. 370, § 1, 1977 Tex.Gen.Laws 1003, *amended by* Act of June 16, 1989, 71st Leg., R.S., ch. 1196, § 5, 1989 Tex.Gen.Laws 4884 (current version at TEX.REV.CIV.STAT.ANN. art. 342–508 (Vernon Supp.1992)). This statute prohibits banks from charging fees for the granting of a loan unless the fees are authorized by law. Interest is an authorized charge and is not a violation of art. 342–508. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.01–1.12 (Vernon 1987) (defining interest as "compensation allowed by law for the use or forbearance or detention of money...."). Bona fide commitment fees are also authorized charges as a fee for the purchase of an option permitting the borrower to enter into a loan in the future. *Gonzales County Sav. & Loan Ass'n v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976). Art. 342–508 also allows a bank to charge fees for certain services rendered and expenses incurred in the making of a loan. In connection with services rendered, a bank may charge a fee of up to $15.00, but if Brazosport charges such a fee, it is in lieu of all interest that could otherwise be collected.

■ A fee for services rendered in connection with the making of the loan is the only fee for which art. 342–508 expressly imposes a penalty. Under this part of the statute, a fee for services rendered in excess of $15.00 precludes a bank from also charging interest on the loan. The jury did not, however, find these two fees to be charges for services rendered. Rather, the jury found that these two charges were fees for making or renewing the loan. The first sentence of art. 342–508 provides that no bank may charge a fee for the granting of a loan unless authorized by law. Although this part of the statute does not express a penalty for violation and no case law has interpreted this part of the statute, we interpret this sentence to impose the penalty of disallowance of the fee. Because the jury found the two fees were not

charges for services rendered, the trial court erred in holding that the jury findings precluded Brazosport from charging interest in addition to the fee.

Although the jury found that these two fees were for the making of a loan, such fees do not violate art. 342–508 if they are fees authorized by law. Thus, we must next determine whether the evidence establishes that these fees were unauthorized. Appellant contends no evidence supports the trial court's finding that the fees were unauthorized and that, in fact, the evidence established as a matter of law that the two fees constituted interest, a charge authorized by statute and by the Texas Constitution. As to the $35,000.00 fee for the original loan, the evidence is inconclusive. The letter from Brazosport to Oak Park approving the original loan called the fee a commitment fee as "consideration for the issuance of this commitment for the Lender holding funds available. . . ." The letter further stated that this fee was in addition to the interest payable on the loan. The President of Brazosport Bank, however, testified that the commitment fee was actually part of the interest on the loan. This testimony and the letter would support a finding that the fee was an authorized charge, either as interest or as a bona fide commitment fee. Subsequent testimony by the bank president, however, tends to support a finding that this was a fee for the granting of the loan. The bank president agreed that this fee was for making the loan. Based on this evidence, we cannot say that the evidence conclusively showed that the $35,000.00 fee was interest.

Because the evidence does not conclusively show that the $35,000.00 fee was interest or any other charge authorized by law, we must uphold the trial court's finding that this fee violated art. 342–508. The first sentence of art. 342–508 precludes a bank from charging a fee for the making of a loan unless the fee is authorized by law. This sentence does not state that, if such a fee is charged, it is in lieu of all interest. Thus, although we uphold the trial court's finding of a violation of art. 342–508, we find that the trial court erred in holding that the $35,000.00 fee was in lieu of all interest and in further holding that Bra-

zosport violated the usury statutes by collecting interest in addition to this fee. Because we believe the penalty for imposing an unauthorized fee under the first sentence of art. 342–508 is disallowance of the fee, the trial court should have simply awarded Oak Park this $35,000.00 fee plus legal interest thereon.

■ As to the $13,400.00 fee paid for renewal of the loan, the jury found that this fee was not for services rendered, but was for the renewal of the loan. The evidence showed that this was a 2% fee charged for the renewal of the original loan after default. A letter from the Brazosport Bank to Clark Flournoy, a partner in the Oak Park Townhouses General Partnership, stated that Brazosport would consider refinancing the loan for an additional two year period at a rate of 12% for a 2% fee. In his testimony about this fee, the bank president called the 2% fee a payment of two "points" or an advance payment of 2% interest. We find no evidence showing that this fee constituted anything other than interest. Thus, we agree with appellant that no evidence established that the 2% fee upon renewal of the loan was a charge unauthorized by law. Because no evidence establishes that the $13,400.00 fee was unauthorized by law, the trial court erred to the extent it found this fee to be a violation of art. 342–508. We sustain points of error one, two, and three.

## II. BREACH OF FIDUCIARY DUTY

In points of error four and five, appellant claims the trial court erred in overruling Brazosport's motions for directed verdict and motion for judgment n.o.v. on the fiduciary duty claims asserted by Oak Park and Flournoy and erred in entering judgment on these claims because the evidence was legally and factually insufficient. Jury questions 8 and 8(A)–8(I) asked whether Brazosport and Oak Park entered into a joint venture and whether the two parties had a "special relationship." Based on affirmative findings to these questions, the jury then reached and answered affirmatively the questions whether the loan transactions were unfair and whether Brazosport breached its fiduciary duty. Appellant challenges the evidence supporting

the jury's findings of a joint venture and a special relationship.

■ We turn first to appellees' claim that appellant did not preserve its right to challenge the factual sufficiency of the evidence supporting the jury finding of a joint venture because it did not raise this claim in its motion for new trial. Appellant argues that it raised a factual insufficiency claim in its Motion Objecting to Entry of the Judgment and Motion for Judgment N.O.V. Citing *Taylor v. Trans–Continental Properties, Ltd.*, 739 S.W.2d 873 (Tex.App.—Tyler 1987, no writ), appellant asserts that its motion objecting to entry of judgment, raising the factual insufficiency claim, preserved error because a motion for new trial, like any other pleading, is judged not by its form but by its substance. Appellant's reliance on *Taylor* is misplaced.

In *Taylor*, the court addressed the timeliness of a motion to extend time to file the record. 739 S.W.2d at 876. A modified judgment was entered on February 23, 1984, and the motion to extend time to file the record was filed on June 13, 1984. *Id.* at 877. Appellants argued that the motion was timely because they had filed a pleading on March 6, 1984 that was the equivalent of a motion for new trial. *Id.* at 875. This pleading, entitled "Demand for Removal," alleged that the modified judgment was not yet final and invoked a provision for arbitration in the contract upon which the suit was based. *Id.* at 876. Although this pleading did not expressly ask the trial court to set aside the judgment or to grant a new trial, the court held that it impliedly asked the trial court to do so. *Id.* Because a motion for new trial is judged not by its form but by its substance, the court held that the pleading was effective to extend the time for accomplishing appellate steps, including the time for filing the record on appeal. *Id.* at 876–77.

Here, appellant argues it preserved its claim of factual insufficiency as to the finding of a joint venture by filing its Objection to Motion for Entry of Judgment and Motion for Judgment N.O.V. Appellant argues that this motion was in substance a motion for new trial. In *Taylor*, however, the motion essentially asked the court to set aside the judgment and to order removal for arbitration in accordance with the contractual provision for arbitration at the option of either party. *Id.* at 876. Here, the motion did not ask the trial court to set aside the judgment. Rather, the motion was in response to appellees' motion for entry of judgment and it requested entry of judgment n.o.v. Furthermore, appellant filed a motion for new trial in which it alleged no evidence supporting the jury finding of a joint venture. This motion did not allege factually insufficient evidence to support the joint venture finding. Based on these facts, we hold that the Objection to Motion for Entry of Judgment and Motion for Judgment N.O.V. is not in substance a motion for new trial. Thus, appellant has not preserved its claim of factual insufficiency of the evidence as to the jury finding of joint venture.

■ We turn to appellant's claim that no evidence supports the jury's finding of a joint venture because there is no evidence of an agreement to share losses. A joint venture must be based on an express or implied agreement. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978). The elements of a joint venture are: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Id.* The intention of the parties is a prime element in determining whether a joint venture exists. *Id.*

As additional consideration for the original loan, the Oak Park Townhouses general partnership assigned a portion of their profits interest in the Oak Park Townhouses project to Brazosport Bank. Because of this agreement to share profits, appellees argue that, under *Austin v. Truly*, 721 S.W.2d 913 (Tex. App.—Beaumont 1986), *aff'd*, 744 S.W.2d 934 (Tex.1988), appellants implicitly agreed to share losses. *See also Couder v. Gomez*, 378 S.W.2d 14 (Tex.1964).

In *Truly*, the parties entered into a "Joint Venture Agreement" which set out the interests of the various parties. 721 S.W.2d at 915–16. The agreement did not specify how losses would be apportioned. *Id.* at 921.

Because a joint venture is in the nature of a partnership, the court applied the Texas Uniform Partnership Act which requires partners to be jointly and severally liable for all debts and obligations of the partnership. *Id.* Thus, the court held that the joint venturers were required to share losses. *Id.*

*Couder v. Gomez* involved a suit by a partner to recover his interest in the assets of a business. 378 S.W.2d at 14. This partner argued that all of the partners should bear portions of an operating loss according to their interests in the business. *Id.* at 15. The court agreed with this contention, noting that an agreement to share equally the profits implies an agreement to share equally the losses. *Id.*

Appellant argues that these cases are inapplicable because the issue in *Couder* and *Truly* was how to divide losses incurred by a partnership or joint venture that was, without dispute, in existence. Appellant also cites cases involving a determination whether a joint venture exists which hold that a showing of an agreement to share losses is required. *See Coastal Plains,* 572 S.W.2d at 287. *See also Gutierrez v. Yancey,* 650 S.W.2d 169, 172 (Tex.App.—San Antonio 1983, no writ) (holding as a matter of law that no joint venture existed where agreement included provision for sharing profits but no express provision for sharing of losses). A joint venture does not exist if any one of the four elements is missing. *State v. Houston Lighting & Power Co.,* 609 S.W.2d 263, 268 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). We find no case law holding that a joint venture may be established by implying that one or more of the required elements exists. Where the issue before the trial court is whether a joint venture exists, proof of an agreement to share profits does not also constitute proof of an agreement to share losses.

The agreement in this case, entitled "Assignment of Profits Interest," provided that upon sale of the property for a purchase price in excess of $725,000.00, Brazosport Bank would receive ten percent (10%) of the excess value. This agreement specifically states that Oak Park, as assignor, was responsible for all liabilities and obligations incurred in connection with the project. Under the commitment letter, Brazosport Bank agreed to collect rents at the project for a monthly fee of $500.00. Because the evidence does not indicate an agreement to share losses, no evidence supported the jury finding of a joint venture.

 Absent a finding of a joint venture, we may uphold the finding of a breach of fiduciary duty only if the evidence otherwise supports the existence of a fiduciary relationship between the parties. A fiduciary relationship may arise from informal moral, social, domestic, or personal dealings as well as from technical relationships such as attorney-client. *See Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962); *Winston v. Lake Jackson Bank,* 574 S.W.2d 628, 629 (Tex.Civ. App.—Houston [14th Dist.] 1978, no writ). The relationship between partners in a general partnership is fiduciary in nature, as is the relationship between a general partner and the limited partners in a limited partnership. *See Crenshaw v. Swenson,* 611 S.W.2d 886, 890 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). A fiduciary relationship exists where a party is under a duty to act or give advice for the benefit of another or where a special confidence is reposed in one who in equity and good conscience should be bound to act in the best interests of the one reposing confidence. *Texas Bank & Trust v. Moore,* 595 S.W.2d 502, 507 (Tex.1980).

In response to jury question 8C, the jury found that Brazosport Bank breached its fiduciary duty to Oak Park and Clark Flournoy in the following ways:

| | | ANSWER |
|---|---|---|
| 1. | by accelerating the maturity of Oak Park's indebtedness on March 15, 1985? | Yes |
| 2. | by requiring C. FLOURNOY to sign an unlimited guaranty agreement? | Yes |
| 3. | by increasing the rate of interest to OAK PARK from ten (10.0) per cent to twelve (12.0) per cent? | Yes |
| 4. | by charging OAK PARK a two (2.0) per cent renewal fee? | Yes |

Based on these findings, the jury awarded $400,763.61 as the fair and reasonable value

of the compensation, benefits, or profits received by Brazosport in the transactions between the parties. In response to jury questions 8E and 8F, the jury found that Claiborne breached his fiduciary duty to both Oak Park and Clark Flournoy and that Brazosport Bank knowingly induced or participated with Claiborne in this breach. In response to jury question 8G, the jury found that Brazosport Bank benefitted from this breach of fiduciary duty. Based on these findings, the jury was asked to determine the amount of money that would fairly and reasonably compensate Oak Park, Flournoy, or both, for damages proximately caused by Claiborne's breach of fiduciary duty and Brazosport's knowing inducement and participation in such breach. The jury awarded no damages to Oak Park, but awarded Flournoy $43,553.64.

As evidence of a special relationship, appellees point to the interrelated members of Brazosport and Oak Park. Charles Claiborne testified that he was a director of Brazosport until late 1983 or 1984 and that he was a partner in Oak Park. Claiborne was no longer a bank director when Brazosport accelerated the note in 1985. Jim Meadows was President of Brazosport and was, at one time, also a partner in Oak Park. Meadows testified that he told Claiborne in 1982 he wanted out of the partnership. The evidence does not conclusively show, however, when Meadows terminated his interest. Claiborne testified that Meadows was not a partner when Brazosport made the loan to Oak Park.

Appellee contends the interrelationship of members of Oak Park and Brazosport supports a finding of a fiduciary relationship based on case law regarding the fiduciary relation of directors to corporations. These cases hold that transactions between corporations with common board members are subject to close scrutiny and are presumptively fraudulent. *See Corsicana Nat'l Bank v. Johnson*, 251 U.S. 68, 90, 40 S.Ct. 82, 91, 64 L.Ed. 141 (1919); *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425 (1921); *Reynolds–Southwestern Corp. v. Dresser Indus., Inc.*, 438 S.W.2d 135, 139 (Tex.Civ.App.—

Houston [14th Dist.] 1969, writ ref'd n.r.e.). We disagree with appellee's reliance on this line of case law. Although these cases reiterate the principle that directors owe a fiduciary duty to their corporations, these cases do not hold that a fiduciary relationship arises between two corporations with common board members that enter into transactions with each other. While this case law would apply to an allegation that one or more partners of Oak Park breached a fiduciary relationship to the other partners in the Oak Park partnership or that a director of the bank breached his fiduciary duty towards the bank, it does not support a finding of a fiduciary relationship between Brazosport and Oak Park. Thus, the trial court erred in rendering judgment for Oak Park on its claim of breach of fiduciary duty against Brazosport Bank.

■ We turn next to the claims of breach of fiduciary duty against Claiborne. Claiborne was a director of Brazosport Bank until 1984 and a partner in Oak Park. The jury found that Claiborne breached his fiduciary duty to Oak Park and Clark Flournoy, and that Brazosport Bank knowingly participated in this breach. As general partner, Claiborne owed a fiduciary duty to the other limited partners. *See Crenshaw*, 611 S.W.2d at 890. As a director of the bank, Claiborne also owed a fiduciary duty to the bank. *See International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex.1963) (stating that corporate officers and directors are fiduciaries). Where a fiduciary relationship exists, the burden is upon the fiduciary to show he acted fairly and informed the beneficiary of all material facts relating to the challenged transaction. *Hruska v. First State Bank*, 727 S.W.2d 732, 736 (Tex.App.—Houston [1st Dist.] 1987), *aff'd in part, rev'd in part on other grounds*, 747 S.W.2d 783 (Tex.1988).

Appellees offer the following as evidence supporting the jury findings: (1) Notwithstanding the stated 30–year term of the original note, Meadows and Claiborne understood that Brazosport never intended to permit the loan to go past two years; (2) Brazosport did not approve the loan in the customary manner; (3) Claiborne failed to disclose to the other partners the essential

terms of the original loan transaction; (4) Claiborne agreed to let Brazosport have an assignment of profits and to collect rents on the property; (5) Brazosport knew Claiborne had a conflict of interest given his simultaneous positions as director of Brazosport and general partner of Oak Park; and (6) Despite knowledge of the conflict of interest, Brazosport dealt exclusively with Claiborne and did nothing to ensure that Claiborne disclosed all facts to the other Oak Park partners.

The commitment letter for the original loan stated the term of the loan 360 months at 10% interest. This letter also stated Brazosport had the option at anytime, after two years and with notice, to declare the note immediately due and payable. No conditions limited this option. All of the partners approved this commitment, indicating their agreement to its terms, including Brazosport's option to call the loan in two years for any reason. Whether or not Meadows or Claiborne knew Brazosport intended to call the loan in two years, the partners were fully aware of this provision and agreed to it.

This letter further required all partners to guarantee the note. In particular, the letter specified that Flournoy would have liability limited to $300,000.00. The letter also stated that Brazosport would receive a profit interest and would maintain records regarding rents for a $500.00 monthly fee. All of the partners, including Flournoy, signed this letter indicating their acceptance and agreement to its terms and conditions. Thus, all of the terms of the original loan were disclosed and agreed to by the partners.

As to approval of the loan by Brazosport's loan committee, James Truck, Executive Vice President of Brazosport at the time of the loan, testified that the loan committee held a formal meeting and approved the loan four or five days after the commitment was issued. Truck added that the loan was discussed with the individual board members before the date of the commitment and they informally authorized its issuance. Truck agreed that the ordinary practice of Brazosport was to get loan committee approval for such loans before issuance of a commitment.

The evidence shows that all of the terms of the loan transaction were disclosed to the partners and they approved and agreed to this transaction. In *Corsicana Nat'l Bank,* the Supreme Court stated that transactions between two corporations "resulting from the agency of officers or directors acting at the same time for both must be deemed presumptively fraudulent, unless expressly authorized or ratified by the stockholders." 251 U.S. at 90, 40 S.Ct. at 91. Here, the partners expressly authorized the transaction. Thus, we find no evidence supporting a finding of breach of fiduciary duty by Claiborne. Because no evidence supports the finding of breach of duty, no evidence supports the finding of participation by Brazosport in such a breach. We sustain point of error five.

In point of error six, Brazosport claims the trial court erred in awarding damages to Oak Park for breach of fiduciary duty in addition to the usury damages. Because we have sustained points of error one through five, reversing the judgment as to usury and breach of fiduciary duty, we need not address this point of error.

### III. JUDGE REVIEW OF JURY WORKSHEET

In point of error seven, Brazosport complains of the trial court's review of the jury worksheet during deliberations. During their deliberations, the jury sent out a note indicating that they were deadlocked on questions 9B–9I, 11A, 13, and 13A. The trial judge questioned the jury foreman about the other jury issues and the foreman stated that all other issues had been answered. The trial judge then asked for the last numbered vote on each of the unanswered questions. The foreman told the judge the numbers on each of these questions and that the numbers had not changed over several votes. The judge then asked the foreman to pencil in, without signing, the jury's answers to the questions, seal it, and deliver it to the judge so that he could determine whether he could render a partial verdict in the case. The judge subsequently gave the jury a dynamite charge.

Appellees contend that Brazosport has not preserved this complaint for appeal

because this argument was not included in Brazosport's motion for new trial. Rule 324 sets out the complaints that must be raised in a motion for new trial as a prerequisite to appeal. Tex.R.Civ.P. 324(b). One of these is a "complaint on which evidence must be heard such as one of jury misconduct...." Tex.R.Civ.P. 324(b)(1). We do not hold the action here to be jury misconduct. Thus, Brazosport was not required to raise this complaint in its motion for new trial.

■ Brazosport contends this communication constitutes reversible error, citing *Houston Elec. Co. v. McLeroy*, 139 Tex. 170, 163 S.W.2d 1062 (Tex.Comm'n App.1942, opinion adopted) and *Houston Elec. Co. v. Lee*, 139 Tex. 166, 162 S.W.2d 692, 693 (Tex. Comm'n App.1942, opinion adopted). These cases do concern trial court review of jury worksheets during deliberations, but the communications between the judge and jury were not in open court. Here, the oral communications were in open court. Even if the review of the jury worksheet was error, there must be a showing of harm or prejudice to appellant. *See Ross v. Texas Employers' Ins. Ass'n*, 153 Tex. 276, 267 S.W.2d 541, 543 (1954). *See also* Tex.R.App.P. 81(b)(1). Brazosport does not demonstrate harm from the trial court's action and argues that no harm need be shown. The supreme court has held otherwise. *See Ross*, 267 S.W.2d at 543. Therefore, we overrule point of error seven.

## IV. ATTORNEY FEES

■ In point of error eight, Brazosport asserts the trial court erred in awarding attorney fees to Flournoy because attorney fees are not available to a party with a judgment for breach of fiduciary duty. Flournoy counters that Brazosport waived the right to complain. Regardless of whether Brazosport should or should not have raised this complaint in the trial court, the jury's alternative findings of DTPA violations support the award of attorney fees. *See* Tex.Bus. & Com.Code Ann. § 17.50(d) (Vernon 1987) (prevailing consumer may recover reasonable and necessary attorney fees). Accordingly, we overrule point of error eight.

## V. ALTERNATIVE JURY FINDINGS

As previously mentioned, Brazosport did not challenge the alternative jury findings of liability. Absent challenges to these findings, we must hold that Brazosport has waived any error as to these grounds. *See Nesmith v. Hester*, 522 S.W.2d 605, 606 (Tex. Civ.App.—Austin 1975, no writ). Appellees contend that we may uphold the judgment on these grounds.

Jury questions one through three contain affirmative findings of mutual mistake, economic duress, and material breach of agreement. These three findings represent defenses to appellees' performance with respect to the loan agreement. Because Brazosport did not challenge these findings on appeal, we must uphold them. Accordingly, these findings support the trial court's denial of recovery to Brazosport.

Other jury questions concern appellees' counterclaims. Jury questions five and six involve the loan fees discussed previously in our analysis of points of error one through three. Jury questions 8 and 8A–8I concern the claim of breach of fiduciary duty addressed previously in our analysis of points of error four and five.

Jury question seven contains an affirmative finding that Brazosport wrongfully demanded payment of the loan without a good faith belief that the prospect of payment or performance by Oak Park was impaired. Question 7A concerns damages related to this finding of wrongful demand. The jury awarded Oak Park zero damages and awarded Clark Flournoy $37,523.64.

The remaining jury questions reflect affirmative findings on appellees' claims of DTPA violations, fraudulent misrepresentation, and negligent misrepresentation. As to these claims, the jury awarded no damages to Oak Park. Oak Park has not challenged the jury's failure to award damages for these claims and has, therefore, waived any complaint.

The jury did award damages to Clark Flournoy on each of these claims. For each of three DTPA violations, the jury awarded Flournoy $43,523.64. The jury also found that these violations were performed know-

ingly and awarded Flournoy $5,000.00 additional damages for misrepresentation (and failure to disclose), $10,000.00 additional damages for Brazosport's unconscionable action, and $5,000.00 additional damages for breach of warranty. In jury question 9G, the jury awarded Flournoy $5,000.00 for mental anguish suffered as a result of these DTPA violations.

Regarding the finding of fraudulent misrepresentation against Flournoy, the jury awarded actual damages of $43,523.64. The jury also awarded Flournoy $43,523.64 for the negligent misrepresentation of Brazosport. In jury question thirteen, the jury found that Brazosport acted with malice in breaching its fiduciary duty, and in making fraudulent and negligent misrepresentations. Accordingly, under question fourteen, the jury awarded Flournoy $10,000.00 in exemplary damages.

Although we may uphold the trial court's denial of recovery to Brazosport based on these alternative jury findings, these findings do not support the trial court's award of damages to Oak Park of $300,763.61, based on the jury finding of breach of fiduciary duty. We previously held the finding of breach of fiduciary duty was supported by no evidence. The trial court also awarded Oak Park of $525,438.87 in statutory penalties for usury. We have held that no evidence supports the finding of usury and no alternative jury finding supports this award of damages to Oak Park.

The alternative findings also do not support the trial court's award to Flournoy of $43,553.64 because this amount was awarded by the jury for breach of fiduciary duty, which we have held was supported by no evidence. There are, however, other jury findings awarding Flournoy $43,523.64 ($30.00 difference). The judgment award to Flournoy of $10,000.00 in exemplary damages is supported by the alternative liability findings of fraudulent and negligent misrepresentation.

Therefore, for the reasons stated above, we hold as follows: (1) we affirm the trial court's judgment to the extent it denies recovery to Brazosport; (2) we reverse the trial court's judgment insofar as it awards damages to Oak Park on the claims of usury and breach of fiduciary duty and we render judgment that Oak Park take nothing; and (3) we reverse the judgment insofar as it awards actual damages to Clark Flournoy for breach of fiduciary duty. We remand the cause to the trial court for a determination of damages due Clark Flournoy based on the jury's answers to the remaining issues.