Opinion issued July 3, 2003



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00823-CV




ABETTER TRUCKING COMPANY, INC. D/B/A AB TRUCKING,
Appellant

V.

JUAN ANGEL ARIZPE, INDIVIDUALLY AND HOUSTON HAULERS,
INC., Appellees




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 01-02041




O P I N I O N

          In this appeal, we are asked to decide whether the evidence is legally and
factually sufficient to sustain the jury’s verdict that appellee Juan Arizpe did not
breach his fiduciary duty to appellant Abetter Trucking, and that he did not tortiously
interfere with Abetter’s contracts with its drivers. We affirm.
Factual & Procedural Background
          For many years, Arizpe drove for Abetter as an independent contractor hauling
sand and gravel. In 1995, Arizpe was placed in charge of the trucking fleet and was
responsible for virtually all field operations. His duties included recruiting, hiring,
and firing drivers, and handling any problems that arose with the drivers or clients. 
Abetter’s principal client was Vulcan Materials. As part of his responsibilities,
Arizpe maintained a close relationship with Scott Brady, Vulcan’s manager, and with
Abetter’s truck drivers. Arizpe and Abetter both acknowledge that Arizpe was a key
employee in a position of trust. It is also evident that he was an at-will employee and
that he was an independent contractor who could cease driving for Abetter at will, 
as could all of the drivers. Arizpe did not have a covenant not to compete with
Abetter.
          Abetter’s fleet averaged 30 trucks; Arizpe and his brothers owned seven of the
trucks. When Abetter’s owner, Bessie Hastings, expressed her intent to retire and sell
the business, Arizpe indicated he was interested in forming his own company. 
Although Hastings ultimately sold the business to Vicki Hoover, an employee in
charge of the administrative tasks, Hastings sold one of Abetter’s buildings to Arizpe. 
          In the fall of 2000, Arizpe informed Brady that he intended to form his own
trucking company and asked if Vulcan would be interested in hiring his trucks. After
Brady expressed his interest, Arizpe took a number of steps in December 2000 to
organize his own business, including incorporating Houston Haulers, applying for
hauling permits from the Texas Department of Transportation, and obtaining
insurance for approximately 25 trucks. The drivers were aware of Arizpe’s plans and
talked about them to each other over their CB radios; many of them contacted Arizpe 
to express an interest in driving for his company, and later supplied their vehicle
identification numbers to him. Although Abetter was aware that Arizpe and his
brothers were likely to leave and take their trucks, Abetter did not know this would
occur very quickly, or that two dozen other truckers would leave Abetter and join
Arizpe as part of his new hauling company. That is precisely what happened. 
          Arizpe resigned from Abetter on January 8, 2001, taking the family’s seven
trucks. The following day, 12 additional drivers began to haul for Arizpe instead of
Abetter. The loss of so many trucks at one time was a very heavy blow to Abetter,
particularly because the trucking industry is highly competitive and there is a chronic
shortage of drivers. The next week, Abetter sued Arizpe for breach of fiduciary duty,
usurpation of corporate opportunities, failure to disclose material facts, waste and
mismanagement, fraud, constructive fraud, conversion, and tortious interference with
its contracts. Abetter requested a constructive trust, an accounting, and a permanent
injunction; it sought to recover lost profits, $200,000 in punitive damages, and
$750,000 for costs of suit.
          The jury found that (1) Arizpe was Abetter’s agent, so that he owed a fiduciary
duty to the company; (2) a relationship of trust and confidence did not exist between
Abetter and Arizpe; (3) Arizpe did not breach his fiduciary duty to Abetter; and (4)
Arizpe did not intentionally interfere with Abetter’s contracts with Vulcan or the
independent drivers. The trial court denied Abetter’s motions for judgment
notwithstanding the verdict and for new trial, and this appeal ensued.
Sufficiency of the Evidence
          In three issues presented for review, Abetter contends the evidence is legally
and factually insufficient to sustain the jury’s findings that (1) Arizpe did not breach
his fiduciary duty to Abetter; (2) no relationship of trust existed between Abetter and
Arizpe; and (3) Arizpe did not intentionally interfere with Abetter’s contracts with
Vulcan or the truck drivers. 
          For Abetter to recover for breach of fiduciary duty, the jury was required to
find the existence of a fiduciary duty, breach of the duty, causation, and damages. 
See generally Avary v. Bank of Am. N.A., 72 S.W.3d 779, 792 (Tex. App.—Dallas
2002, pet. denied). At a trial on the merits, whether a party has breached a fiduciary
duty is not decided as a matter of law; it is, instead, a fact issue for the jury’s
determination. See generally Brazosport Bank of Tex. v. Oak Park Townhouses, 889
S.W.2d 676, 683-85 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Thus, we
analyze this issue under the standard of review appropriate to sufficiency of the
evidence.
          Standard of Review
          In reviewing whether the evidence is legally sufficient, we disregard all
evidence and inferences contrary to the jury’s finding. Lenz v. Lenz 79 S.W.3d 10,
19 (Tex. 2002). We will sustain a factual sufficiency challenge only if, after viewing
all the evidence, the evidence is so weak or the verdict so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); Eberle v. Adams, 73 S.W.3d 322, 327 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). 
          Conflicting Jury Answers
          In its second issue, Abetter contends that the jury’s answer to question two was
against the great weight and preponderance of the evidence. The jury was asked in
question two, “Was there a relationship of trust and confidence between Arizpe and
Abetter?” The jury answered “No.” We note that, despite its answer of “no” to
question two, the jury found in question one that Arizpe was Abetter’s agent. These
answers are apparently contradictory. On review, however, we conclude that the
contradiction is immaterial.
          There are two types of fiduciary relationships. The first is a formal fiduciary
relationship, which arises as a matter of law and includes the relationships between
attorney and client, principal and agent, partners, and joint venturers. Insurance Co.
of North Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998). The second is an informal
fiduciary relationship, which may arise from “a moral, social, domestic or purely
personal relationship of trust and confidence, generally called a confidential
relationship.” Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276,
287 (Tex. 1998). One who occupies a fiduciary relationship to another must measure
his conduct by high equitable standards, and not by the standards required in dealings
between ordinary parties. Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d
509, 514 (Tex. 1942). A fiduciary duty encompasses at the very minimum a duty of
good faith and fair dealing, and it requires a party to place the interest of the other
party before his own. See Crim Truck & Tractor Co. v. Navistar Int’l Transp. Corp.,
823 S.W.2d 591, 594 (Tex. 1992).
          By its answer to question one, the jury agreed that Arizpe was Abetter’s agent;
thus, there was a formal fiduciary relationship between Arizpe and Abetter as a matter
of law. Accordingly, Arizpe owed Abetter a duty of good faith and fair dealing and
was required to put Abetter’s interests ahead of his own. Id. Question two was
simply an alternate means by which the jury could have found the existence of a
fiduciary relationship between Abetter and Arizpe. 
          The test that determines whether a conflict in jury answers is fatal is not
whether the findings are inconsistent, or even irreconcilable. Transmission Exch.,
Inc. v. Long, 821 S.W.2d 265, 274 (Tex. App.—Houston [1st Dist.] 1991, writ
denied). The test is whether, considering one finding alone, a judgment should be
rendered for the plaintiff while, considering the other finding alone, a judgment
should be rendered for the defendant. Id. That test is not satisfied here. Because the
jury had already found Arizpe had a fiduciary relationship with Abetter when it found
Arizpe was Abetter’s agent, Arizpe’s duty to act in Abetter’s best interests was
established. Had the jury answered “no” to question one but “yes” to question two,
or if it had answered “yes” to both questions, Arizpe’s duty still would have been
established and the jury still would have addressed the second element, i.e, whether
Arizpe breached that duty.


 It was not the jury’s conflicting answers to questions one
and two that governed the outcome. Rather, it was the jury’s finding that Arizpe did
not breach his fiduciary duty that determined the outcome. Thus, we conclude that
the variance in the answers was not fatal.
          We address the substance of issue two in our analysis of the legal and factual
sufficiency of the evidence to support the jury’s findings.
          Tortious Interference with Contract
          In its third issue, Abetter argues that the evidence was legally and factually
insufficient to support the jury’s finding that Arizpe did not interfere with its
contracts with the company’s drivers. Texas law protects contracts from interference,
but not all interferences with contractual relations are tortious in nature. John Masek
Corp. v. Davis, 848 S.W.2d 170, 175 (Tex. App.—Houston [1st Dist.] 1992, writ
denied). The elements of a cause of action for tortious interference with contractual
relations are: (1) the existence of a contract subject to interference; (2) a willful and
intentional act of interference (3) that was a proximate cause of the plaintiff's
damages; and (4) actual damage or loss. Id. It is well established that an agent
cannot be liable for tortious interference with its principal’s contracts because the
agent and the principal are treated as one. Id. When the defendant is both an agent
and a third party who allegedly induces others to breach their contracts, however, a
plaintiff may prevail. Powell Indus., Inc. v. Allen, 985 S.W.2d 455, 456-57 (Tex.
1998). To prevail, the plaintiff must prove that the agent acted willfully and
intentionally to serve the agent’s personal interests at the corporation’s expense. Id.
at 457. Whether Arizpe willfully and intentionally interfered with Abetter’s contracts 
to serve his own interests was a fact issue for the jury to determine. See Brazosport,
889 S.W.2d at 686. It is inextricably tied to the evidence we must examine to
determine whether Arizpe breached his fiduciary duty. Accordingly, we address both
issues together.
          Breach of Fiduciary Duty
          In its first issue, Abetter contends that the evidence was legally and factually
insufficient to support the jury’s finding that Arizpe did not breach his fiduciary duty
to the company. The record shows that Arizpe was a key Abetter employee and agent
who was in charge of all field operations and was the principal person who interacted
with the drivers and clients. He acted as Abetter’s agent in hiring, firing, and
managing the drivers, and he was the person responsible for troubleshooting any
problems with the drivers or the clients for whom the company hauled materials. The
jury determined that Arizpe was Abetter’s agent and that he had a fiduciary duty to
the company.
          When a fiduciary relationship of agency exists between employee and
employer, the employee has a duty to act primarily for the benefit of the employer in
matters connected with his agency. Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 200 (Tex. 2000). Among the agent’s fiduciary duties to his principal are the
duty not to compete with the principal on his own account in matters relating to the
subject matter of the agency and the duty to deal fairly with the principal in all
transactions between them. Id. The employee has a duty to deal openly with the
employer and to fully disclose to the employer information about matters affecting
the company’s business. Bray v. Squires, 702 S.W.2d 266, 270 (Tex. App.—Houston
[1st Dist.] 1985, no writ). If an agent, while employed by his principal, uses his
position to gain a business opportunity belonging to the employer, such conduct
constitutes an actionable wrong. Id.
          A fiduciary relationship, however, does not preclude the fiduciary from making
preparations for a future competing business venture; nor do such preparations
necessarily constitute a breach of fiduciary duties. Id. An at-will employee may
properly plan to compete with his employer, and may take active steps to do so while
still employed. Augat, Inc. v. Aegis, Inc., 565 N.E.2d 415, 419 (Mass. 1991) (quoted
in Johnson, 73 S.W.3d at 201). The employee has no general duty to disclose his
plans and may secretly join with other employees in the endeavor without violating
any duty to the employer. Id. 
          Absent special circumstances, once an employee resigns, he may actively
compete with his former employer. Id. In Texas, to resign from one’s employment
and go into business in competition with one’s former employer is, under ordinary
circumstances, a constitutional right. Ledel v. Bill Hames Shows, Inc., 367 S.W.2d
182, 184 (Tex. Civ. App.—Fort Worth 1963, no writ). There is nothing legally
wrong in engaging in such competition or in preparing to compete before the
employment terminates. M P I, Inc. v. Dupre, 596 S.W.2d 251, 254 (Tex. Civ.
App.—Fort Worth 1980, writ ref’d n.r.e.). Moreover, the possibility of crippling, or
even destroying, a competitor is inherent in a competitive market. Augat, 565 N.E.2d
at 422. An employer who wishes to restrict the post-employment competitive
activities of a key employee may seek to accomplish that goal through a non-competition agreement. Id. at 419.
          Courts have been, and should be, careful in defining the scope of the fiduciary
obligations an employee owes when acting as the employer’s agent in the pursuit of
business opportunities. Johnson, 73 S.W.3d at 201. This is because an employer’s
right to demand and receive loyalty must be tempered by society’s legitimate interest
in encouraging competition. Id. The tension between the obligations of a fiduciary
and his rights as a potential competitor reflects two conflicting public policies: one
that seeks to protect a business from unfair competition, and the other that favors free
competition in the economic sphere. Metal Lubricants Co. v. Engineered Lubricants
Co., 411 F.2d 426, 429 (8th Cir. 1969). If the former is carried to its extreme, it
deprives a person of the right to earn a living; conversely, the latter right, if
unchecked, could make a mockery of the fiduciary concept, with its concomitants of
loyalty and fair play. Id.
          Here, Arizpe informed Abetter that he planned to form his own company and
would be taking seven trucks belonging to him and his brothers. However, he did not
inform Abetter that he had incorporated his company (Houston Haulers), obtained
permits, and obtained insurance; nor did he tell Abetter that a number of the
company’s drivers had expressed their intent to drive for Arizpe’s company. Abetter
did not learn of the formation of the new company, or that it was losing 20 trucks
instead of only seven, until the day after Arizpe resigned. When Arizpe applied for
insurance, he provided the vehicle identification numbers (VIN numbers) of not only
the seven trucks belonging to his family, but also of two dozen trucks belonging to
other Abetter drivers. The insurance agent testified, however, that Arizpe said he had
“no idea” how many trucks or drivers he would actually need to insure. Arizpe
testified that he was “really surprised” at the number of drivers who entered into lease
agreements with him, and that he was not expecting so many to lease their trucks to
Houston Haulers. 
          Abetter relies primarily on Kinzbach to argue that Arizpe had a duty to fully
disclose his activities. We find the facts in Kinzbach distinguishable. The seller in
Kinzbach offered a secret commission to the employee of a rival company if the
employee could negotiate a certain price without revealing what Kinzbach was
willing to accept; the employee did not disclose to his company his adverse interest
in the deal. 160 S.W.2d at 510. Thus, the employee in Kinzbach failed to disclose
the only relevant information. Id. That is not the case here.
          For the right of employees to agree among themselves to compete with an
employer to be meaningful, it must be exercisable without the necessity of revealing
the plans to the employer. Metal Lubricants, 411 F.2d at 429. Arizpe disclosed his
intention to form a competing company, including taking his and his brothers’ trucks,
to Abetter. Despite his fiduciary obligations, Arizpe was not required to disclose
even this much information. See Metal Lubricants, 411 F.2d at 429. To form his own
company, Arizpe had to incorporate or otherwise establish a business entity, obtain
permits, and obtain insurance. These were permissible preparations to compete, not
breaches of a fiduciary duty. See Johnson, 73 S.W.3d at 201. The VIN numbers on
the trucks that Arizpe disclosed to the insurance agent were not protected or
confidential information; thus Arizpe did not violate his fiduciary duty by supplying
the numbers. Id. at 202. Furthermore, the record shows that Abetter had sold Arizpe
a building to use in this planned business.
          The true surprise, and injury, to Abetter was the timing of Arizpe’s resignation,
the immediacy with which the competition ensued, and the number of Abetter’s
drivers who chose to immediately terminate their contracts with Abetter in favor of
driving for Arizpe. The right to prepare to compete notwithstanding, if the nature of
a party’s preparation to compete is significant, it may give rise to a cause of action for
breach of a fiduciary duty. Herider Farms-El Paso, Inc. v. Criswell, 519 S.W.2d 473,
476 (Tex. Civ. App.—El Paso 1975, writ ref’d n.r.e.). This is particularly true if a
supervisor-manager acts as a “corporate pied piper” and lures all of his employer’s
personnel away, thus destroying the business. Augat, 565 N.E.2d at 420. An
employee may use his general knowledge, skill, and experience acquired in the
former employment to compete. Johnston v. American Speedreading Acad., Inc., 526
S.W.2d 163, 166 (Tex. Civ. App.—Dallas 1975, no writ). However, there are
recognized limitations on the conduct of an employee who plans to compete with his
former employer. The employee may not (1) appropriate the company’s trade
secrets; (2) solicit his employer’s customers while still working for his employer; (3)
solicit the departure of other employees while still working for his employer, or (4)
carry away confidential information, such as customer lists. Johnson, 73 S.W.3d at
202; Johnston, 526 S.W. at 166; Herider Farms, 519 S.W.2d at 476-77.
          There were no trade secrets or confidential information for Arizpe to
appropriate. The question, then, is whether he solicited customers or solicited the
departure of other employees. Abetter contends that Arizpe breached his fiduciary
duties by unfairly soliciting business from Vulcan and unfairly luring away Abetter’s
drivers. These actions, if proved, would constitute a breach of Arizpe’s fiduciary
duty to Abetter. See Johnson, 73 S.W.3d at 202. However, the record contains
contradictory testimony on both points.
          Brady, Vulcan’s manager, testified that Arizpe had told him about Bessie
Hastings’s upcoming retirement, mentioned that he would like to start his own
company, and “just briefly broached the subject of hauling for Vulcan some day.” 
Contrary to Abetter’s assertion, there was no testimony that Arizpe sought or obtained
a “commitment” from Brady. Brady also testified that there “was no question at all”
that when Arizpe was at Vulcan on Abetter business, he was doing his best for
Abetter. Brady described Arizpe as a good, faithful, and loyal Abetter employee. 
          Several of the defecting truck drivers testified that Arizpe did not approach
them about working for his company; instead, they approached him. The drivers
further testified that it was they, not Arizpe, who speculated about whether Abetter
would still be in business after Arizpe left the company. Aside from Arizpe, the
Abetter employees did not interact much with the drivers; e.g., they rarely attended
social functions planned for the drivers and would not directly deal with the drivers
to solve problems. Hoover mentioned that, although most of the drivers spoke
Spanish exclusively or predominantly, the only Abetter employee who spoke Spanish
was Arizpe.
          Arizpe, Hoover, and the drivers testified variously that Abetter (1) collected a
$500 deposit from each driver but paid no interest on the money; (2) charged drivers
a 10% fee whenever it loaned them money; (3) lowered the rates it charged the
drivers to fend off a competitor, then raised the rates again soon after, angering some
drivers; (4) occasionally withheld the drivers’ pay to enforce compliance with truck
maintenance requirements; and (5) charged one of the highest rates in the industry. 
The drivers testified that they had not been able to deal directly with Abetter’s owner
regarding rates, and believed they would be dealing directly with Arizpe at his new
company. They further believed that they would be earning more because the
percentage Arizpe intended to charge the drivers was lower than Abetter’s rate. 
Miguel Cardenas, the agent who replaced Arizpe at Abetter, testified that he
understood the drivers left Abetter because Arizpe was offering a better rate. 
Cardenas also testified, however, that Abetter has been unsuccessful at regaining the
drivers by offering them even better rates.
          The jury is the sole judge of a witness’s credibility and the weight to be given
the testimony. Eberle, 73 S.W.2d 327. The jury may believe one witness and
disbelieve another, and it may resolve inconsistencies in any testimony. Id. This
Court cannot substitute its opinion for that of the trier of fact and determine that it
would have weighed the evidence differently or reached a different conclusion. Id. 
Whether Arizpe’s conduct while still employed by Abetter constituted impermissible
solicitation of a current customer or other employees was a fact issue to be
determined by the jury. See Brazosport, 889 S.W.2d at 686. 
          The jury could reasonably have concluded that Arizpe’s acts did not rise to the
level of solicitation, that he acted in Abetter’s best interests while functioning as its
agent, that the information he disclosed was sufficient, and that his acts were
permissible preparation to compete. The jury could also have reasonably concluded
that the drivers left Abetter simply because Arizpe offered better working conditions,
a more personal relationship, and lower rates, not because Arizpe unfairly induced
them to work for his company or tortiously interfered with their contracts. 
Accordingly, we hold that the evidence was legally and factually sufficient to support
the jury’s verdict.
          We overrule issues one, two, and three.
 

          We affirm the trial court’s judgment.



                                                                        Evelyn V. Keyes
                                                                        Justice


Panel consists of Justices Taft, Keyes, and Higley.