M P I, INC., Appellant,

v.

John L. DUPRÉ et al., Appellees.

No. 18203.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 28, 1980.

Rehearing Denied March 27, 1980.

Shannon, Gracey, Ratliff & Miller, and Sam Rosen and Margaret E. Holland, Fort Worth, for appellant.

Golden, Potts, Boeckman & Wilson, and George G. Potts, Dallas, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk and Sam J. Day and Patrick A. Barbolla, Fort Worth, for appellees.

## OPINION

MASSEY, Chief Justice.

M P I, INC. (MPI) sued two of its former employees, John L. Dupré and James F. West, Jr., and their company, Vector Industries, Inc. (Vector), seeking a temporary injunction, permanent injunction and damages after the two men had formed Vector and gone into business for themselves in competition with MPI. The gist of MPI's suit alleged that Dupré and West were utilizing trade secrets of MPI in violation of a duty of confidentiality and loyalty they had to MPI as a result of their employment, plus, as to Dupré, his former position as one of the officers of MPI. Pending the outcome of the suit, the trial court granted a temporary injunction. Shortly thereafter, Dupré and West counterclaimed for money damages, alleging that they were due money as a bonus which MPI had not paid them. No special issue was submitted to the jury on West's counterclaim, but after a trial to a jury, Dupré was awarded $35,-000.00 and MPI was denied both a permanent injunction and damages. From this judgment, MPI has appealed because of the counterclaim awarded Dupré and because of the denial of affirmative injunctive relief.

We affirm.

Plaintiff MPI brought suit against two of its former employees, John L. Dupré and James F. West, Jr., and against these de-

fendants' company, Vector Industries, Inc., which had begun business on May 2, 1978. MPI prayed for relief that each of the named defendants (1) be permanently enjoined for a period of two years from doing business with any of the MPI customers located in the sales area in which defendant West had represented MPI during the time he was an MPI employee; (2) be permanently enjoined for a period without limit—from making any use of a certain "mold" which the defendants allegedly had copied at the MPI premises and either made use of or intended to make use of to their profit and to the detriment of MPI; and (3) be held liable for damages for loss of profits from May 1, 1978 to date of trial (a) for illegal use of confidential information of special customer relations and (b) from unfair competition. There was also petition for relief by way of damages for other actions of Dupré. In substance what is stated exhibits the form of relief MPI sought by its suit.

On September 20, 1978, after Vector had been a going business for approximately four and one-half months, the trial court granted MPI a temporary injunction to continue for a period of 75 days from October 16, 1978 enjoining Dupré and West from directly or indirectly contacting, selling, soliciting, or in any manner seeking to do business with certain of the MPI customers, stating the names of such customers. On January 9, 1979, within the 75 day period prescribed for temporary injunction, the case proceeded to trial on the merits before a jury.

Defendant West counterclaimed for bonus compensation allegedly unpaid. Defendant Dupré counterclaimed for a bonus allegedly contracted to be paid him by reason of the performance by him of his employment for MPI.

Upon the trial, the jury refused to find for MPI that (1) there had been a breach of "good faith" on the part of Dupré while serving as an officer and director for MPI during the period he also was its employee; (2) that Dupré had West to terminate his services as an employee to MPI; (3) that

Dupré was guilty of any act amounting to a proximate cause of monetary damage to MPI; or (4) that Dupré had materially breached his contract with MPI. The jury also found, in refusing to find for MPI by a preponderance of the evidence, that West was not in a position of trust and confidence while an employee of MPI and did not gain confidential information about the MPI customers by reason of or while an employee of MPI. The jury also found, by its answer "none" to a special issue, that MPI had lost nothing by way of profits by reason of lost sales because of sales made by Vector. The jury furthermore refused to find that the details, construction and operation of the MPI "mold" constituted its trade secret.

On the matter of the crossaction of West no special issue was submitted to the jury. The crossaction of Dupré was submitted, and in answer to special issues the jury found that there had been a mutual agreement between MPI and Dupré for an amendment of a bonus arrangement existing that the amount of bonus mutually agreed to be paid to Dupré as the maximum amount to be paid was $35,000.00.

By the judgment no relief whatever was granted to MPI. Relief was granted to Dupré alone, and that granted was an in personam judgment for the damages of $35,000.00, to be offset by the amount of $1,225.01 as the entitlement of MPI from Dupré, due to overpayment of certain expense accounts, with the resulting net amount of damages awarded Dupré against MPI being $33,774.99, plus costs.

MPI appealed therefrom. There was no appeal by the defendants on their crossactions. The only thing sought by them is affirmance of the judgment.

MPI seeks relief from its obligation to pay any monetary amount to Dupré, with insistence that by breach on the part of Dupré of his employment contract there was a release of the MPI obligation to pay the Dupré bonus. On this MPI seeks rendition by judgment of this court. Also sought is a reversal with remand of the denial of injunctive relief sought by it against all the defendants.

We are not concerned with the court's charge to any material degree, there having been no objections or exceptions taken to it. However, MPI attacks some of the answers returned on the grounds of "no evidence", that they are "contrary to the great weight and preponderance of the evidence", and that application of the law to the facts require that the answers be settled contrary to the answers returned. MPI also complains that some special issues making inquiry should not have been submitted despite the absence of objection to their submission.

We keep in mind that no part of the crossactions against MPI were predicated upon allegations of wrongful temporary injunction whereby they were enjoined for the 75 days from October 16, 1978 pursuant to the trial court's order of September 20, 1978.

■ We have arrived at the conclusion that we may readily resolve the matter of the Dupré award of damages and that in no way involved is any question of whether MPI either is, or is not, entitled to any injunctive relief. Breach on the part of MPI to pay the bonus contracted was positively established by the evidence. The thrust of the argument by MPI is that its performance, by payment, was excusable and to be excused, not because of any failure of performance by Dupré in respect to the matter contracted, but rather, that the MPI performance was excused by Dupré's breach of duties unrelated to that contract.

The promise of Dupré was to perform duties which he did perform to the last day of April, 1978, with the return performance of MPI to be the payment of the bonus. MPI feels it is excused from performance of its duty to pay Dupré the $35,000.00 bonus because it was established that prior to that date of Dupré's contractual termination Dupré planned and prepared to go into competitive business while he was still employed by MPI. MPI contends that since Dupré did so plan and act while still an employee, without informing MPI, MPI does not owe Dupré the return performance of payment of the bonus.

Two separable matters are involved. Dupré, having fully performed, is entitled to the return performance, e. g., payment on the part of MPI. No matter what justification MPI may have in its complaint, and no matter whether by reason thereof MPI might be entitled to some amount in damages from Dupré (—lesser or greater in amount than the amount of payment owing by contract—) its obligation to make the return performance persists. MPI's obligation to Dupré would only be offset by a credit if Dupré was responsible to MPI in damages.

On what is written to this point see Restatement of the Law, Contracts, p. 585, "Contracts", Topic 3, "Restitution", Sec. 347, "Restitution of Value of a Performance Rendered by One Party as a Remedy for Total Breach by the Other" (1932).

■ We next consider and discuss the MPI complaint because it failed to obtain the relief sought by way of permanent injunction. Dupré and West, through Vector, had gone into business for themselves in competition with MPI, their former employer. The policy of the law is one in approval for such to be done. It generally is a part of what is called the free enterprise system. Now and always such a thing is done with the thought of the former employees that they will get business from those of the customers of the former employer with whom they have become acquainted because of their prior employment upon going into business for themselves. There is nothing legally wrong in so doing or in making preparation to do so after contractual termination, though done prior to the time for that termination. Restatement (Second) of Agency, p. 216, "Principal v. Agent", § 393, "Competition as to Subject Matter of Agency" (1958), Comment (e) *Preparation for competition after termination of agency,* at p. 218. It is only when an employee uses his official position to gain a business opportunity which belongs to his employer or when he actually competes for customers while still employed that a legal wrong will have accrued.

To protect themselves employers have often taken measures to contractually provide, as a condition of employment or continuation of employment, that their employees not go into competing business with them, and such contracts have generally been upheld where found to limit such to a reasonable time and within a properly limited area. In the present instance MPI had no contract at all with West which would hamper him. The circumstances of termination of Dupré's services, by service for a contractual period, were such that he was likewise free.

Not under attack by point of error is the jury finding upon the amount, which if paid in cash would fully compensate MPI for lost profits, if any, on lost sales, if any, submitted along with appropriate instruction. The jury, by return of its answer "none" refused to find any past damages to MPI, despite the fact there was open competition between the parties from May 2, 1978 to October 16, 1978, when Dupré, West and Vector were placed under the ban of the temporary injunction (which was persisting at time trial on the merits began on January 9, 1979). The question and answer might have been important in relation to the matter of any offset for MPI, against its total liability to Dupré under rules of contract law, but ceased to have importance as such by the jury's refusal to find any damages. It also would have importance with regard to the injunction for which MPI prayed though its character would actually be evidentiary for this purpose. In any event MPI has not complained.

By a review of the evidence we are convinced that the finding of no damage should not be disturbed even if there had been an MPI complaint by point of error. Wholly wanting, save by possible inferences to have been drawn had the jury found some substantial amount of damages to MPI for past injury, was any evidence upon any potential damages which could or would result to MPI in the future in the event Dupré, West and Vector, or any of them, were not enjoined further (beyond the period during which the temporary injunction was effective). Applicable, at least to a degree, is the rule that where findings of "no damages" by the jury are not made subject to complaint on appeal the judgment is not to be reversed, even where there might exist reversible error in respect to the liability issues. *Wooley v. West*, 575 S.W.2d 659 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n. r. e.).

By reason of this, as we see it, all the complaints MPI did make by points of error, even had reversible error thereby been exhibited (which we do not find), there could not be reversible error because of the court's refusal to grant a permanent injunction. Equity rules the disposition of injunction question posed by the appeal. One who seeks injunctive relief in a court of equity must show, the court not only that he has a clear right of a character which equity will protect, but also that the act or acts complained of, including trespass, constitute an injurious invasion of that right, and which, if permitted, will in reasonable probability result in or threaten actual and substantial damage. An injunction will not lie to restrain acts, however irregular or unauthorized, that do not occasion or threaten injury to the complainant. 42 Am. Jur.2d p. 764 *Injunctions* § 29 "Existence and character of injury", (1969); 31 Tex. Jur.2d p. 67 *Injunction* § 22 "(Factors considered) Imminence of harm", (1962).

The jury refused to find for MPI any material breach of Dupré's duties because of his employment and service as its employee or as its officer and director. MPI argues strenuously that as a matter of law the answer to that question was settled to the contrary of the answer returned by the jury; and, alternatively that the jury's refusal to find for MPI was so contrary to the greater weight and preponderance of the evidence as to be clearly wrong. We hold against MPI on both. It was part of the burden of proof which MPI had to meet, and, it not having been discharged as a matter of law, the jury's finding was entirely appropriate by the evidence.

Though not obligated to do so we have severally examined all the points of error in

256

which the MPI complaints are contained. They are all overruled.

The judgment is affirmed.