**ABETTER TRUCKING COMPANY, INC. d/b/a AB Trucking, Appellant,**

v.

**Juan Angel ARIZPE, Individually and Houston Haulers, Inc., Appellees.**

No. 01–01–00823–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 3, 2003.

Jim L. Garcia, M.H. Cersonsky, Rachel Rosen, Alonso, Cersonsky & Garcia, P.c., Houston, for Appellant.

Robert B. Dubose, Cook & Roach, LLP, Houston, for Appellee.

Panel consists of Justices TAFT, EVELYN V. KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

In this appeal, we are asked to decide whether the evidence is legally and factually sufficient to sustain the jury's verdict

that appellee Juan Arizpe did not breach his fiduciary duty to appellant Abetter Trucking, and that he did not tortiously interfere with Abetter's contracts with its drivers. We affirm.

### Factual & Procedural Background

For many years, Arizpe drove for Abetter as an independent contractor hauling sand and gravel. In 1995, Arizpe was placed in charge of the trucking fleet and was responsible for virtually all field operations. His duties included recruiting, hiring, and firing drivers, and handling any problems that arose with the drivers or clients. Abetter's principal client was Vulcan Materials. As part of his responsibilities, Arizpe maintained a close relationship with Scott Brady, Vulcan's manager, and with Abetter's truck drivers. Arizpe and Abetter both acknowledge that Arizpe was a key employee in a position of trust. It is also evident that he was an at-will employee and that he was an independent contractor who could cease driving for Abetter at will, as could all of the drivers. Arizpe did not have a covenant not to compete with Abetter.

Abetter's fleet averaged 30 trucks; Arizpe and his brothers owned seven of the trucks. When Abetter's owner, Bessie Hastings, expressed her intent to retire and sell the business, Arizpe indicated he was interested in forming his own company. Although Hastings ultimately sold the business to Vicki Hoover, an employee in charge of the administrative tasks, Hastings sold one of Abetter's buildings to Arizpe.

In the fall of 2000, Arizpe informed Brady that he intended to form his own trucking company and asked if Vulcan would be interested in hiring his trucks. After Brady expressed his interest, Arizpe took a number of steps in December 2000 to organize his own business, including incorporating Houston Haulers, applying for hauling permits from the Texas Department of Transportation, and obtaining insurance for approximately 25 trucks. The drivers were aware of Arizpe's plans and talked about them to each other over their CB radios; many of them contacted Arizpe to express an interest in driving for his company, and later supplied their vehicle identification numbers to him. Although Abetter was aware that Arizpe and his brothers were likely to leave and take their trucks, Abetter did not know this would occur very quickly, or that two dozen other truckers would leave Abetter and join Arizpe as part of his new hauling company. That is precisely what happened.

Arizpe resigned from Abetter on January 8, 2001, taking the family's seven trucks. The following day, 12 additional drivers began to haul for Arizpe instead of Abetter. The loss of so many trucks at one time was a very heavy blow to Abetter, particularly because the trucking industry is highly competitive and there is a chronic shortage of drivers. The next week, Abetter sued Arizpe for breach of fiduciary duty, usurpation of corporate opportunities, failure to disclose material facts, waste and mismanagement, fraud, constructive fraud, conversion, and tortious interference with its contracts. Abetter requested a constructive trust, an accounting, and a permanent injunction; it sought to recover lost profits, $200,000 in punitive damages, and $750,000 for costs of suit.

The jury found that (1) Arizpe was Abetter's agent, so that he owed a fiduciary duty to the company; (2) a relationship of trust and confidence did not exist between Abetter and Arizpe; (3) Arizpe did not breach his fiduciary duty to Abetter; and (4) Arizpe did not intentionally interfere with Abetter's contracts with Vulcan or the independent drivers. The trial court de-

nied Abetter's motions for judgment notwithstanding the verdict and for new trial, and this appeal ensued.

## Sufficiency of the Evidence

In three issues presented for review, Abetter contends the evidence is legally and factually insufficient to sustain the jury's findings that (1) Arizpe did not breach his fiduciary duty to Abetter; (2) no relationship of trust existed between Abetter and Arizpe; and (3) Arizpe did not intentionally interfere with Abetter's contracts with Vulcan or the truck drivers.

■ For Abetter to recover for breach of fiduciary duty, the jury was required to find the existence of a fiduciary duty, breach of the duty, causation, and damages. *See generally Avary v. Bank of Am. N.A.*, 72 S.W.3d 779, 792 (Tex.App.-Dallas 2002, pet. denied). At a trial on the merits, whether a party has breached a fiduciary duty is not decided as a matter of law; it is, instead, a fact issue for the jury's determination. *See generally Brazosport Bank of Tex. v. Oak Park Townhouses*, 889 S.W.2d 676, 683–85 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Thus, we analyze this issue under the standard of review appropriate to sufficiency of the evidence.

### Standard of Review

■ In reviewing whether the evidence is legally sufficient, we disregard all evidence and inferences contrary to the jury's finding. *Lenz v. Lenz* 79 S.W.3d 10, 19 (Tex.2002). We will sustain a factual sufficiency challenge only if, after viewing all the evidence, the evidence is so weak or the verdict so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Eberle v. Adams*, 73 S.W.3d 322, 327 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

## Conflicting Jury Answers

■ In its second issue, Abetter contends that the jury's answer to question two was against the great weight and preponderance of the evidence. The jury was asked in question two, "Was there a relationship of trust and confidence between Arizpe and Abetter?" The jury answered "No." We note that, despite its answer of "no" to question two, the jury found in question one that Arizpe was Abetter's agent. These answers are apparently contradictory. On review, however, we conclude that the contradiction is immaterial.

■ There are two types of fiduciary relationships. The first is a formal fiduciary relationship, which arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers. *Insurance Co. of North Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). The second is an informal fiduciary relationship, which may arise from "a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998). One who occupies a fiduciary relationship to another must measure his conduct by high equitable standards, and not by the standards required in dealings between ordinary parties. *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942). A fiduciary duty encompasses at the very minimum a duty of good faith and fair dealing, and it requires a party to place the interest of the other party before his own. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992).

By its answer to question one, the jury agreed that Arizpe was Abetter's agent; thus, there was a formal fiduciary relation-

ship between Arizpe and Abetter as a matter of law. Accordingly, Arizpe owed Abetter a duty of good faith and fair dealing and was required to put Abetter's interests ahead of his own. *Id.* Question two was simply an *alternate* means by which the jury could have found the existence of a fiduciary relationship between Abetter and Arizpe.

■ The test that determines whether a conflict in jury answers is fatal is not whether the findings are inconsistent, or even irreconcilable. *Transmission Exch., Inc. v. Long,* 821 S.W.2d 265, 274 (Tex. App.-Houston [1st Dist.] 1991, writ denied). The test is whether, considering one finding alone, a judgment should be rendered for the plaintiff while, considering the other finding alone, a judgment should be rendered for the defendant. *Id.* That test is not satisfied here. Because the jury had already found Arizpe had a fiduciary relationship with Abetter when it found Arizpe was Abetter's agent, Arizpe's duty to act in Abetter's best interests was established. Had the jury answered "no" to question one but "yes" to question two, or if it had answered "yes" to both questions, Arizpe's duty still would have been established and the jury still would have addressed the second element, *i.e,* whether Arizpe breached that duty.[1] It was not the jury's conflicting answers to questions one and two that governed the outcome. Rather, it was the jury's finding that Arizpe did not breach his fiduciary duty that determined the outcome. Thus, we conclude that the variance in the answers was not fatal.

We address the substance of issue two in our analysis of the legal and factual sufficiency of the evidence to support the jury's findings.

### Tortious Interference with Contract

■ In its third issue, Abetter argues that the evidence was legally and factually insufficient to support the jury's finding that Arizpe did not interfere with its contracts with the company's drivers. Texas law protects contracts from interference, but not all interferences with contractual relations are tortious in nature. *John Masek Corp. v. Davis,* 848 S.W.2d 170, 175 (Tex.App.-Houston [1st Dist.] 1992, writ denied). The elements of a cause of action for tortious interference with contractual relations are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Id.* It is well established that an agent cannot be liable for tortious interference with its principal's contracts because the agent and the principal are treated as one. *Id.* When the defendant is both an agent and a third party who allegedly induces others to breach their contracts, however, a plaintiff may prevail. *Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 456–57 (Tex.1998). To prevail, the plaintiff must prove that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense. *Id.* at 457. Whether Arizpe willfully and intentionally interfered with Abetter's contracts to serve his own interests was a fact issue for the jury to determine. *See Brazosport,* 889 S.W.2d at 686. It is inextricably tied to the evidence we must examine to determine whether Arizpe breached his fiduciary duty. Accordingly, we address both issues together.

### Breach of Fiduciary Duty

1. If the jury had answered "no" to both questions one and two, and found that Arizpe did not have a fiduciary duty to Abetter, the inquiry would then have been whether the evidence was sufficient to sustain the jury's answers.

In its first issue, Abetter contends that the evidence was legally and factually insufficient to support the jury's finding that Arizpe did not breach his fiduciary duty to the company. The record shows that Arizpe was a key Abetter employee and agent who was in charge of all field operations and was the principal person who interacted with the drivers and clients. He acted as Abetter's agent in hiring, firing, and managing the drivers, and he was the person responsible for troubleshooting any problems with the drivers or the clients for whom the company hauled materials. The jury determined that Arizpe was Abetter's agent and that he had a fiduciary duty to the company.

▬▬▬ When a fiduciary relationship of agency exists between employee and employer, the employee has a duty to act primarily for the benefit of the employer in matters connected with his agency. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 200 (Tex.2002). Among the agent's fiduciary duties to his principal are the duty not to compete with the principal on his own account in matters relating to the subject matter of the agency and the duty to deal fairly with the principal in all transactions between them. *Id.* The employee has a duty to deal openly with the employer and to fully disclose to the employer information about matters affecting the company's business. *Bray v. Squires,* 702 S.W.2d 266, 270 (Tex.App.-Houston [1st Dist.] 1985, no writ). If an agent, while employed by his principal, uses his position to gain a business opportunity belonging to the employer, such conduct constitutes an actionable wrong. *Id.*

▬▬▬ A fiduciary relationship, however, does not preclude the fiduciary from making preparations for a future competing business venture; nor do such preparations necessarily constitute a breach of fiduciary duties. *Id.* An at-will employee may properly plan to compete with his employer, and may take active steps to do so while still employed. *Augat, Inc. v. Aegis, Inc.,* 409 Mass. 165, 565 N.E.2d 415, 419 (1991) (quoted in *Johnson,* 73 S.W.3d at 201). The employee has no general duty to disclose his plans and may secretly join with other employees in the endeavor without violating any duty to the employer. *Id.*

▬▬▬ Absent special circumstances, once an employee resigns, he may actively compete with his former employer. *Id.* In Texas, to resign from one's employment and go into business in competition with one's former employer is, under ordinary circumstances, a constitutional right. *Ledel v. Bill Hames Shows, Inc.,* 367 S.W.2d 182, 184 (Tex.Civ.App.-Fort Worth 1963, no writ). There is nothing legally wrong in engaging in such competition or in preparing to compete before the employment terminates. *M P I, Inc. v. Dupre,* 596 S.W.2d 251, 254 (Tex.Civ.App.-Fort Worth 1980, writ ref'd n.r.e.). Moreover, the possibility of crippling, or even destroying, a competitor is inherent in a competitive market. *Augat,* 565 N.E.2d at 422. An employer who wishes to restrict the post-employment competitive activities of a key employee may seek to accomplish that goal through a non-competition agreement. *Id.* at 419.

Courts have been, and should be, careful in defining the scope of the fiduciary obligations an employee owes when acting as the employer's agent in the pursuit of business opportunities. *Johnson,* 73 S.W.3d at 201. This is because an employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition. *Id.* The tension between the obligations of a fiduciary and his rights as a potential competitor reflects two conflicting public policies: one that seeks to protect a business from un-

fair competition, and the other that favors free competition in the economic sphere. *Metal Lubricants Co. v. Engineered Lubricants Co.*, 411 F.2d 426, 429 (8th Cir. 1969). If the former is carried to its extreme, it deprives a person of the right to earn a living; conversely, the latter right, if unchecked, could make a mockery of the fiduciary concept, with its concomitants of loyalty and fair play. *Id.*

Here, Arizpe informed Abetter that he planned to form his own company and would be taking seven trucks belonging to him and his brothers. However, he did not inform Abetter that he had incorporated his company (Houston Haulers), obtained permits, and obtained insurance; nor did he tell Abetter that a number of the company's drivers had expressed their intent to drive for Arizpe's company. Abetter did not learn of the formation of the new company, or that it was losing 20 trucks instead of only seven, until the day after Arizpe resigned. When Arizpe applied for insurance, he provided the vehicle identification numbers (VIN numbers) of not only the seven trucks belonging to his family, but also of two dozen trucks belonging to other Abetter drivers. The insurance agent testified, however, that Arizpe said he had "no idea" how many trucks or drivers he would actually need to insure. Arizpe testified that he was "really surprised" at the number of drivers who entered into lease agreements with him, and that he was not expecting so many to lease their trucks to Houston Haulers.

Abetter relies primarily on *Kinzbach* to argue that Arizpe had a duty to fully disclose his activities. We find the facts in *Kinzbach* distinguishable. The seller in *Kinzbach* offered a secret commission to the employee of a rival company if the employee could negotiate a certain price without revealing what Kinzbach was willing to accept; the employee did not dis-

close to his company his adverse interest in the deal. 160 S.W.2d at 510. Thus, the employee in *Kinzbach* failed to disclose the *only* relevant information. *Id.* That is not the case here.

For the right of employees to agree among themselves to compete with an employer to be meaningful, it must be exercisable without the necessity of revealing the plans to the employer. *Metal Lubricants*, 411 F.2d at 429. Arizpe disclosed his intention to form a competing company, including taking his and his brothers' trucks, to Abetter. Despite his fiduciary obligations, Arizpe was not required to disclose even this much information. *See Metal Lubricants*, 411 F.2d at 429. To form his own company, Arizpe had to incorporate or otherwise establish a business entity, obtain permits, and obtain insurance. These were permissible preparations to compete, not breaches of a fiduciary duty. *See Johnson*, 73 S.W.3d at 201. The VIN numbers on the trucks that Arizpe disclosed to the insurance agent were not protected or confidential information; thus Arizpe did not violate his fiduciary duty by supplying the numbers. *Id.* at 202. Furthermore, the record shows that Abetter had sold Arizpe a building to use in this planned business.

The true surprise, and injury, to Abetter was the timing of Arizpe's resignation, the immediacy with which the competition ensued, and the number of Abetter's drivers who chose to immediately terminate their contracts with Abetter in favor of driving for Arizpe. The right to prepare to compete notwithstanding, if the nature of a party's preparation to compete is significant, it may give rise to a cause of action for breach of a fiduciary duty. *Herider Farms–El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 476 (Tex.Civ. App.-El Paso 1975, writ ref'd n.r.e.). This is particularly true if a supervisor-manager

acts as a "corporate pied piper" and lures all of his employer's personnel away, thus destroying the business. *Augat,* 565 N.E.2d at 420. An employee may use his general knowledge, skill, and experience acquired in the former employment to compete. *Johnston v. American Speedreading Acad., Inc.,* 526 S.W.2d 163, 166 (Tex.Civ.App.-Dallas 1975, no writ). However, there are recognized limitations on the conduct of an employee who plans to compete with his former employer. The employee may not (1) appropriate the company's trade secrets; (2) solicit his employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer, or (4) carry away confidential information, such as customer lists. *Johnson,* 73 S.W.3d at 202; *Johnston,* 526 S.W.2d at 166; *Herider Farms,* 519 S.W.2d at 476–77.

There were no trade secrets or confidential information for Arizpe to appropriate. The question, then, is whether he solicited customers or solicited the departure of other employees. Abetter contends that Arizpe breached his fiduciary duties by unfairly soliciting business from Vulcan and unfairly luring away Abetter's drivers. These actions, if proved, would constitute a breach of Arizpe's fiduciary duty to Abetter. *See Johnson,* 73 S.W.3d at 202. However, the record contains contradictory testimony on both points.

Brady, Vulcan's manager, testified that Arizpe had told him about Bessie Hastings's upcoming retirement, mentioned that he would like to start his own company, and "just briefly broached the subject of hauling for Vulcan some day." Contrary to Abetter's assertion, there was no testimony that Arizpe sought or obtained a "commitment" from Brady. Brady also testified that there "was no question at all" that when Arizpe was at Vulcan on Abetter

business, he was doing his best for Abetter. Brady described Arizpe as a good, faithful, and loyal Abetter employee.

Several of the defecting truck drivers testified that Arizpe did not approach them about working for his company; instead, they approached him. The drivers further testified that it was they, not Arizpe, who speculated about whether Abetter would still be in business after Arizpe left the company. Aside from Arizpe, the Abetter employees did not interact much with the drivers; *e.g.,* they rarely attended social functions planned for the drivers and would not directly deal with the drivers to solve problems. Hoover mentioned that, although most of the drivers spoke Spanish exclusively or predominantly, the only Abetter employee who spoke Spanish was Arizpe.

Arizpe, Hoover, and the drivers testified variously that Abetter (1) collected a $500 deposit from each driver but paid no interest on the money; (2) charged drivers a 10% fee whenever it loaned them money; (3) lowered the rates it charged the drivers to fend off a competitor, then raised the rates again soon after, angering some drivers; (4) occasionally withheld the drivers' pay to enforce compliance with truck maintenance requirements; and (5) charged one of the highest rates in the industry. The drivers testified that they had not been able to deal directly with Abetter's owner regarding rates, and believed they would be dealing directly with Arizpe at his new company. They further believed that they would be earning more because the percentage Arizpe intended to charge the drivers was lower than Abetter's rate. Miguel Cardenas, the agent who replaced Arizpe at Abetter, testified that he understood the drivers left Abetter because Arizpe was offering a better rate. Cardenas also testified, however, that Abetter has

been unsuccessful at regaining the drivers by offering them even better rates.

 The jury is the sole judge of a witness's credibility and the weight to be given the testimony. *Eberle,* 73 S.W.3d at 327. The jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any testimony. *Id.* This Court cannot substitute its opinion for that of the trier of fact and determine that it would have weighed the evidence differently or reached a different conclusion. *Id.* Whether Arizpe's conduct while still employed by Abetter constituted impermissible solicitation of a current customer or other employees was a fact issue to be determined by the jury. *See Brazosport,* 889 S.W.2d at 686.

The jury could reasonably have concluded that Arizpe's acts did not rise to the level of solicitation, that he acted in Abetter's best interests while functioning as its agent, that the information he disclosed was sufficient, and that his acts were permissible preparation to compete. The jury could also have reasonably concluded that the drivers left Abetter simply because Arizpe offered better working conditions, a more personal relationship, and lower rates, not because Arizpe unfairly induced them to work for his company or tortiously interfered with their contracts. Accordingly, we hold that the evidence was legally and factually sufficient to support the jury's verdict.

We overrule issues one, two, and three.

We affirm the trial court's judgment.