# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 5, 2008

Charles R. Fulbruge III
Clerk

No. 07-50609

RAY MART INC doing business as, Tri-Supply Co; WELDON VYBIRAL

Plaintiffs-Counter Defendants-Appellees

v.

STOCK BUILDING SUPPLY OF TEXAS LP

Defendant-Counter Plaintiff-Appellant

v.

GLENN COVINGTON

Counter Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:06-cv-00063

Before SMITH and PRADO, Circuit Judges, and YEAKEL[*], District Judge.

PER CURIAM:[**]

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This case primarily concerns the enforceability of noncompete covenants under Texas law. The district court found the noncompete covenant between Stock Building Supply of Texas, L.P. ("Stock") and Weldon Vybiral ("Vybiral") to be unenforceable and ruled against Stock on all of its other claims against Vybiral, Ray Mart, Inc., doing business as Tri-Supply Company ("Tri-Supply"), and Glenn Covington ("Covington"). Because we hold that the district court erred in concluding that the noncompete covenant was unenforceable, we vacate in part, affirm in part, and remand the case to the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background

Stock provides building materials and construction services to homebuilders. In January 2003, Stock purchased the assets of Wenco Distributors ("Wenco"), including Wenco's door mill operation in Temple, Texas. At the time of this purchase, Vybiral had been the general manager of the Temple facility for over thirteen years. As part of the purchase agreement with Wenco, Stock required that all branch managers of Wenco's Texas locations execute an employment agreement with Stock. Vybiral entered into such an agreement (the "Employment Agreement"), which included (1) a defined term of three years; (2) a statement that Stock was entitled to terminate Vybiral for "good cause," as defined in the agreement; (3) a noncompete covenant; (4) a nonsolicitation of customers and employees covenant; and (5) a nondisclosure of trade secrets covenant.

Tri-Supply is a building supply company that operates door mills and prehanging shops throughout Texas. Some time after Stock purchased the Temple facility, Tri-Supply opened a door mill and prehanging shop in Temple. In the ensuing months, Vybiral and Covington, an outside salesperson for Stock, left Stock for Tri-Supply, and many Stock employees soon joined them. In total, over a dozen Stock employees went to work for Tri-Supply. Thereafter,

profitability at Stock's Temple facility declined, and in February 2007, Stock closed the facility.

The parties dispute the reasons for the employees' departure from Stock and Stock's subsequent downfall. Stock asserts that after it began operating in Temple, Tri-Supply decided to open operations nearby and sought to poach Stock employees. Stock further asserts that Tri-Supply colluded with Vybiral and Covington to accomplish these goals, pointing to several encounters between Tri-Supply representatives and Stock employees as evidence of improper solicitation. Stock claims that the loss of its key employees led directly to declining profitability and the eventual closing of its Temple facility.

Tri-Supply, Vybiral, and Covington assert that almost immediately after Stock's acquisition of Wenco, the work environment at the Temple facility changed for the worse. They contend that unhappy workers and unhappy customers eventually left Stock of their own volition and turned to Tri-Supply. Further, Tri-Supply, Vybiral, and Covington sharply contest Stock's allegations of improper solicitation of employees, characterizing all encounters between Tri-Supply representatives and Stock employees as casual and harmless.

B. Procedural History

On December 5, 2005, Tri-Supply and Vybiral brought a petition for declaratory judgment against Stock in Texas state court seeking a declaration that the noncompete covenant in Vybiral's Employment Agreement was void and unenforceable. Stock removed the case to the Eastern District of Texas, which later transferred the case to the Western District of Texas. On March 2, 2006, Stock filed its counterclaims, applied for a preliminary and permanent injunction, and moved for a temporary restraining order to enforce Vybiral's Employment Agreement. The district court denied Stock's motion for a temporary restraining order, granted a preliminary injunction enjoining Vybiral

from soliciting Stock's customers, and denied an injunction as to the noncompete covenant.

Following a bench trial, the district court issued findings of fact and conclusions of law, ruling against Stock on all claims. The district court concluded that (1) the noncompete covenant was unenforceable, (2) the nonsolicitation of customers covenant was unenforceable, (3) Vybiral did not engage in conduct that violated the nonsolicitation of employees covenant, (4) Vybiral and Covington had not breached a fiduciary duty or duty of loyalty to Stock, (5) Tri-Supply did not tortiously interfere with Vybiral's Employment Agreement, (6) Tri-Supply did not tortiously interfere with Stock's employment relationships with its employees, and (7) there was no evidence of Stock's damages. This timely appeal followed.

## II. STANDARD OF REVIEW

In an appeal from a bench trial, we review findings of fact for clear error. Bd. of Trustees New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Gabriel, Roeder, Smith & Co., 529 F.3d 506, 509 (5th Cir. 2008). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." Id. "Reversal for clear error is warranted only if the court has a definite and firm conviction that a mistake has been committed." Id. (quotation omitted). Finally, we review legal issues de novo. Id.

## III. DISCUSSION

A.     Noncompete Covenant

Stock first asserts that the district court erred in finding the noncompete covenant unenforceable. The enforceability of a noncompete covenant is a question of law. Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex. 1994), abrogated in part on unrelated grounds by Alex Sheshunoff Mgmt. Servs.,

L.P. v. Johnson, 209 S.W.3d 644 (Tex. 2006). Under § 15.50 of the Texas Business and Commerce Code, a noncompete covenant is enforceable if (1) "it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made," and (2) "it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.50(a).

Determining whether a noncompete covenant is ancillary to an otherwise enforceable agreement consists of two steps. First, we must identify an "otherwise enforceable agreement" between Vybiral and Stock. See Strickland v. Medtronic, Inc., 97 S.W.3d 835, 838 (Tex. App.—Dallas 2003, pet. dism'd w.o.j.). This requires setting aside the noncompete covenant and determining whether any binding promises remain that would constitute an enforceable agreement. 31-W Insulation Co. v. Dickey, 144 S.W.3d 153, 157 (Tex. App.—Fort Worth 2004, pet. withdrawn). Second, we must determine whether the noncompete covenant is ancillary to this otherwise enforceable agreement. Strickland, 97 S.W.3d at 839. In order to meet this "ancillary to" step, "'(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.'" Sheshunoff, 209 S.W.3d at 649 (quoting Light, 883 S.W.2d at 647).

1.    Otherwise Enforceable Agreement

Disregarding the noncompete covenant, we find that an otherwise enforceable agreement existed between Vybiral and Stock. Each party made multiple enforceable promises in the Employment Agreement. Stock points, in particular, to (1) Stock's promise to employ Vybiral for three years, (2) Vybiral's

promise to work for Stock for three years,[1] and (3) Vybiral's promise not to disclose any trade secrets or other confidential information that he obtained while working for Stock.[2] We agree with Stock that these promises constitute an otherwise enforceable agreement. Stock promised to employ Vybiral for a term of three years, terminable only for good cause.[3] In exchange, Vybiral promised to work for Stock for three years and not to disclose any confidential information that he obtained during his employment. These promises created an employment relationship terminable only for good cause, which is an otherwise enforceable agreement for the purposes of § 15.50. See C.S.C.S., Inc. v. Carter, 129 S.W.3d 584, 591 (Tex. App.—Dallas 2003, no pet.).

---

[1] Paragraph one of the Employment Agreement reads:
Employment and Term. The Employer agrees to employ the Employee for a period of three years commencing on the date hereof and the Employee agrees to be employed by the Employer for such period.

[2] Paragraph nine of the Employment Agreement reads:
Covenant Against Disclosure of Trade Secrets. The Employee agrees that he shall always keep confidential any and all information obtained by him as an employee of the Employer regarding any trade secrets or conditions and methods of operation of the Employer which are not generally known throughout the industry.

[3] Vybiral asserts that his employment was at will. Texas follows the general rule that, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998). "In order to alter the employment at will presumption, a writing which attempts to alter the presumption must, in a meaningful and special way, limit the employer's right to terminate the employment at will." Evan's World Travel, Inc. v. Adams, 978 S.W.2d 225, 229 (Tex. App.—Texarkana 1998, no pet.) (quotation omitted). In the present case, Stock has agreed to employ Vybiral for a fixed term, terminable only for good cause. In so doing, Stock has placed meaningful limits on its ability to terminate Vybiral's employment. See C.S.C.S., Inc. v. Carter, 129 S.W.3d 584, 591 (Tex. App.—Dallas 2003, no pet.) ("A contract for a stated term of employment . . . limits the employer's ability to terminate at will if the parties negotiated the terms of employment and intended to directly limit in a meaningful and special way the employee's at-will status." (quotation marks omitted)). Thus, Vybiral's employment was not at will.

2.    Ancillary To

For Vybiral's noncompete covenant to be enforceable, it must be ancillary to this otherwise enforceable agreement. As noted above, there are two elements in the "ancillary to" inquiry: (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing, and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

We have little trouble finding that the noncompete covenant is designed to enforce Vybiral's promise not to disclose any confidential information that he obtained while working for Stock, satisfying the second element. See, e.g., Curtis v. Ziff Energy Group, Ltd., 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (finding a noncompete covenant ancillary to an otherwise enforceable agreement where "the covenant not to compete [was] designed to enforce [the employee's] consideration not to disclose or use the confidential information or trade secrets after employment"); Ireland v. Franklin, 950 S.W.2d 155, 158 (Tex. App.—San Antonio 1997, no writ) (finding a noncompete covenant ancillary to an otherwise enforceable agreement where "the covenant not to compete [was] designed to enforce [the employee's] consideration not to disclose or use . . . trade secrets").

Consequently, all that remains is finding consideration given by Stock in the otherwise enforceable agreement that gives rise to Stock's interest in restraining Vybiral from competing. Stock argues that the Employment Agreement includes at least three bases for finding such an interest: (1) Stock's promise of term employment gave rise to an interest in protecting its goodwill, (2) Stock's promise of term employment gave rise to an interest in protecting confidential information that Vybiral would obtain during his employment, and (3) Stock's actual provision of confidential information to Vybiral gave rise to an

interest in protecting that information. We address only Stock's second argument.

A noncompete covenant is not always ancillary to an agreement for term employment, as the employer's consideration—the promise of a fixed term of employment terminable only for cause—does not necessarily give rise to an interest in restraining an employee from competing. See, e.g., Light, 883 S.W.2d at 646 n.10. Stock, however, asserts that its promise of term employment implicitly but necessarily involved Stock providing Vybiral with confidential information, giving rise to an interest in protecting this information from disclosure.

Under the circumstances of this case, we find this argument persuasive. The Employment Agreement indicates that both Stock and Vybiral anticipated that Vybiral would work at Stock for at least three years. Although the Employment Agreement did not explicitly set out Vybiral's duties, the district court found that Vybiral was told that his duties would not change from those he had under Wenco. While working for both Wenco and Stock, Vybiral was the general manger of the Temple facility, a job that would likely involve the use of confidential information such as price lists, sales strategies, and customer information. Further, the Employment Agreement itself contemplated that Vybiral would be receiving confidential information, as evidenced by the nondisclosure covenant. Finally, the district court found that Vybiral did in fact have access to Stock's confidential information, including sales strategies, marketing strategies, pricing strategies, vendor arrangements, contractor programs, and customer information.

Together, these facts suggest that Vybiral's three years of employment would likely involve the use of confidential information and that Vybiral and Stock were both aware of this when entering into the Employment Agreement. While admittedly a close call, we hold that Stock's promise to employ Vybiral for

three years, in light of the above facts, gave rise to an interest in protecting the confidential information that Stock gave to Vybiral.[4] Such an interest is precisely the kind that noncompete covenants are meant to protect. See, e.g., Sheshunoff, 209 S.W.3d at 649. Thus, we hold that the district court erred in concluding that the noncompete covenant was not ancillary to an otherwise enforceable agreement. We vacate the district court's denial of Stock's cause of action for enforcement of the noncompete covenant or damages for its breach, as well as the declaratory judgment that Vybiral is not bound by the noncompete covenant.

Stock has established that the noncompete covenant in this case satisfies the first requirement of § 15.50. Stock invites us to decide the second requirement—that the noncompete covenant contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer. Because the district court did not reach this question, we decline to address this issue. Also, if the noncompete covenant is ultimately enforceable, the district court must determine the appropriate relief for any violation thereof. We thus remand this issue to the district court.

B.    Nonsolicitation of Customers

Stock asserts that the district court erred in finding the nonsolicitation of customers covenant unenforceable. In addition to concluding that the covenant was unenforceable for the same reasons as the noncompete covenant, the district

---

[4] Unlike cases where courts have found that an employer's consideration did not give rise to an interest in restraining an employee from competing, Stock has articulated a coherent theory explaining how its promise to Vybiral gives rise to an interest in restraining Vybiral from competing. Cf. Olander v. Compass Bank, 172 F. Supp. 2d 846, 855 (S.D. Tex. 2001) (finding no interest in restraining an employee from competing where the employer had "not articulated any coherent theory explaining how" its promise of stock options gave rise to an interest in restraining competition, but emphasizing that it was not ruling that stock options could never give rise to such an interest), aff'd, 44 F. App'x 651 (5th Cir. 2002).

court also denied Stock's claim for breach of the nonsolicitation of customers covenant because it was not included in Stock's first amended counterclaim. Stock does not raise any argument as to why its failure to adequately plead this issue should be excused and does not assert that the issue was tried by consent of the parties under Federal Rule of Civil Procedure 15(b)(2). Therefore, Stock could not raise this claim at trial and we will not consider it here.

C. Factual Challenges

In its third, fourth, and fifth arguments on appeal, Stock asserts that the district court clearly erred in concluding (1) that Vybiral did not violate the nonsolicitation of employees covenant, (2) that Vybiral and Covington did not breach a fiduciary duty to Stock, and (3) that Tri-Supply did not tortiously interfere with Vybiral's Employment Agreement or Stock's other employment relationships. As Stock asserts only clear error, we treat these arguments as challenges to the district court's factual determinations regarding these claims.

1. Nonsolicitation of Employees

Stock asserts that the district court erred in finding that Vybiral did not engage in any conduct that violated the nonsolicitation of employees covenant. Assuming that the nonsolicitation covenant is enforceable,[5] the district court's determination of whether Vybiral engaged in conduct that violated the covenant is a factual issue that we review for clear error. Cf. Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 287-88 (5th Cir. 2007) (noting that there was sufficient evidence for a jury to find that employees' conduct "rose to the level of solicitation").

---

[5] The parties dispute the standard for determining the enforceability of the nonsolicitation of employees covenant. We need not decide this issue. It appears that the district court found—or at least assumed—that the nonsolicitation of employees covenant was enforceable. It then went on to find that Vybiral did not engage in any conduct that violated the covenant. Because we hold that the district court's factual determination was not clearly erroneous, we assume only for the sake of argument that the nonsolicitation of employees covenant is enforceable.

Stock focuses primarily on the encounters between Vybiral, other Stock employees, and Tri-Supply representatives as instances establishing Vybiral's solicitation of Stock employees on behalf of Tri-Supply. These encounters might appear suspicious if removed entirely from any context, especially considering that all of the Stock employees involved eventually left to work for Tri-Supply. However, Stock has little to point to besides suspicion, and Vybiral presented sufficient testimony for the district court to conclude that none of the encounters in question violated Vybiral's nonsolicitation of employees covenant. Thus, Stock has failed to establish that the district court clearly erred in concluding that Vybiral did not engage in any conduct that violated the nonsolicitation of employees covenant, and we affirm the district court's conclusion on this issue.

2.     Fiduciary Duty and Duty of Loyalty

Stock asserts that the district court erred in concluding that Vybiral and Covington did not breach a fiduciary duty or duty of loyalty to Stock. As an agent of the employer, an employee generally "has a duty to act primarily for the benefit of the employer in matters connected with his agency." Abetter Trucking Co. v. Arizpe, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Employees can, however, properly plan to compete with their employer while still employed. See id.; RESTATEMENT (THIRD) OF AGENCY § 8.04 (2006). Whether an employee's acts constitute a breach of fiduciary duty or permissible preparation to compete is a factual issue that we review for clear error. Cf. Navigant Consulting, 508 F.3d at 288 (noting that there was sufficient evidence for a jury to conclude that employees' behavior breached their fiduciary duty to their employer); Abetter Trucking, 113 S.W.3d at 513 (noting that "[t]he jury could reasonably have concluded that [an employee's] acts did not rise to the level of solicitation, that he acted in [the employer's] best interests while functioning as its agent, that the information he disclosed was sufficient, and that his acts were permissible preparation to compete.").

11

Stock asserts that Vybiral and Covington each breached their fiduciary duties to Stock by (1) acting on behalf of a competitor—Tri-Supply—in soliciting Stock employees while they were still employees of Stock, (2) competing with Stock on matters relating to their agency by soliciting Stock employees on behalf of Tri-Supply while still employed by Stock, and (3) not dealing fairly with Stock by failing to inform Stock that Tri-Supply was opening a facility in Temple, that they had accepted employment with a competitor, and that the competitor had offered employment to numerous Stock employees.

As discussed in the previous section, the district court did not clearly err in concluding that Vybiral did not solicit or otherwise interfere with the employment relationships of Stock employees. As for Covington, the only evidence that Stock points to is Covington's leaving a Tri-Supply form on the desks of one or two other Stock employees. Yet Covington testified that he did not contact anyone about interviewing for prospective employment with Tri-Supply while he was still employed by Stock. Thus, the district court could very reasonably have found that Covington did not solicit any Stock employees while still working for Stock. As to the allegations that Vybiral and Covington breached their fiduciary duties to Stock by not disclosing that Tri-Supply was opening a facility in Temple, that Vybiral and Covington intended to leave, or that others were leaving, the district court very reasonably could have found this behavior to be permissible preparation for competition. See Abetter Trucking, 113 S.W.3d at 510 ("The employee has no general duty to disclose his plans and may secretly join with other employees in the endeavor without violating any duty to the employer.").

Stock has not presented sufficient evidence to convince us that the district court's conclusions regarding breach of fiduciary duty were clearly erroneous. Thus, we affirm the district court's determination that neither Vybiral nor Covington breached his fiduciary duty to Stock.

3.    Tortious Interference

Stock asserts that the district court erred in finding that Tri-Supply did not tortiously interfere with Vybiral's Employment Agreement or Stock's other employment relationships.  "The elements of a cause of action for tortious interference with a contract are:  (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred."  Holloway v. Skinner, 898 S.W.2d 793, 795-96 (Tex. 1995).

Stock asserts that Tri-Supply tortiously interfered with Vybiral's Employment Agreement by (1) recruiting and hiring Vybiral while aware of his noncompete covenant, and (2) encouraging Vybiral's aggressive solicitation and recruitment of Stock's top employees while aware of his nonsolicitation of employees covenant.  It is unclear on what basis the district court found no tortious interference with Vybiral's Employment Agreement.  As Stock suggests, the district court's judgment might have been predicated on its earlier conclusion that the noncompete covenant was unenforceable.  Because we hold that the district court erred in its evaluation of the noncompete covenant, we also vacate its conclusion as to Tri-Supply's tortious interference with Vybiral's employment agreement and remand this issue to the district court.

Stock further asserts that Tri-Supply interfered with Stock's employment relationships through Vybiral and Covington.  Stock essentially argues that Vybiral and Covington were acting on behalf of Tri-Supply when allegedly soliciting and recruiting Stock employees, thus willfully and intentionally interfering with Stock's employment relationships.  As discussed above, however, the district court did not clearly err in concluding that Vybiral and Covington did not improperly solicit Stock employees.  With no improper solicitation, Vybiral and Covington's actions could not be the basis of a tortious-interference claim.

13

Thus, the district court did not clearly err in concluding that Tri-Supply did not tortiously interfere with Stock's employment relationships with its employees.

D.    Damages

Finally, Stock raises two arguments regarding damages.  First, Stock asserts that the district court erred in excluding Stock's expert witness, her report, and her exhibits.  Tri-Supply, Vybiral, and Covington moved to exclude Stock's expert on the grounds that Stock was late in designating her and providing her report.  We review the district court's decision to exclude an expert witness for abuse of discretion.  See Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1000 (5th Cir. 1998).

In determining whether to allow a late-designated expert to testify, a district court should consider "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party if the witness is allowed to testify; (3) the possibility that a continuance would cure potential prejudice; and (4) the explanation given for the failure to identify the witness."  Id.  On appeal, the parties rehash the arguments made before the district court regarding the motion to exclude.  Stock focuses in particular on whether Tri-Supply is to blame for Stock's late provision of the expert report, arguing that Tri-Supply never provided Stock with material necessary for the expert to complete her report.  Tri-Supply contests that it did provide the material, noting that it was available for Stock to inspect at a Tri-Supply location.   The district court never made any findings regarding the motion to exclude, simply granting the motion without elaboration at the beginning of the trial.  As Stock has provided insufficient evidence to disturb this conclusion,[6] we hold that the district court did not abuse its discretion in excluding Stock's expert witness.

---

[6] Indeed, as Tri-Supply did not mention in its motion to exclude that it had made all necessary materials available to Stock at a Tri-Supply location, it is quite reasonable to assume that the district court was especially unpersuaded by Stock's explanation for its tardiness.

Second, Stock asserts that the district court erred in concluding that there was no evidence of Stock's damages. As we are vacating the district court's judgment in part and remanding for a potential determination of liability, we also vacate the district court's conclusion regarding damages. If the district court finds that either Vybiral or Tri-Supply is liable to Stock on any of the remanded issues, it should then determine the damages, if any, to which Stock is entitled.

## IV. CONCLUSION

In sum, we VACATE the district court's judgment insofar as it was predicated on the district court's conclusion that the noncompete covenant was unenforceable, including Stock's claim against Tri-Supply for tortious interference with Vybiral's Employment Agreement, and REMAND that portion of the case for further proceedings not inconsistent with this opinion. We AFFIRM the remainder of the district court's judgment.

VACATED and REMANDED in part, AFFIRMED in part.